Peter F. Bellinger, Appellant, *v.* Alexander M. Gray, impleaded, etc., Respondent.

The duties imposed by the tax laws upon boards of supervisors of examining the assessment rolls and equalizing the valuation of the real estates in the different towns and wards (1 R. S., 395, § 31), and of estimating and setting down in the assessment rolls the respective sums to be paid as taxes (§ 33), are *quasi* judicial and cannot be delegated, but must be performed by the boards as such; after the different questions as to what changes, if any, are to be made in the valuations and those upon which depend the amount of money required to be raised are determined, the insertion of what is necessary in the rolls to carry out such determinations is clerical, but the rolls must be completed before the warrants required to be issued (§ 36) are annexed thereto.

Accordingly *held*, that where a board of supervisors determined to increase the valuation of the real estate in a town by adding a certain per cent thereto, but attached their warrant to the assessment roll before it was completed by inserting the increased valuation and extending the tax, and delivered it thus incomplete to the supervisor of the town, who, after the adjournment of the board, filled up the blank columns in the roll and delivered it, with the warrant, to the collector, with directions to collect the tax; that the assessment roll and warrant were void, and the supervisor was liable in trespass for property seized thereunder, and this, although the roll was completed in accordance with the determination of the board.

Plaintiff placed the amount of a tax against him in a package upon his counter before the collector, but forbid his taking it, claiming that the warrant was defective and notified him that he would be held responsible therefor. The collector took the package. *Held*, that this was not a voluntary payment, and plaintiff was not estopped from disputing the legality of the warrant.

An assessment against an individual for " circulation notes and profits " is illegal; and such an assessment appearing upon the roll, the warrant is void on its face. (Reynolds, C.)

An assessment roll not verified by one of the assessors and not accompanied by a certificate of the other assessors stating the cause of such omission (1 R. S., 394, § 30) is defective, and the omission to properly verify it is fatal to its validity. (Reynolds, C.)

Upon a tax warrant issued by the board of supervisors of Herkimer county an impression was made with a die, upon which was engraved the words " Seal. Herkimer County Board of Supervisors." No other seal was attached. *Held* (Reynolds, C.), that the warrant was imperfectly sealed.

(Argued January 17, 1873; decided March term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial district, affirming a judgment in favor of defendant, entered upon the decision of the court upon trial without a jury.

The action was brought against Gray and one John M. Smith, for wrongfully taking and converting legal tender notes to the amount of $2,525.81.

The defendants, by separate answers, denied the allegations in the complaint, and justified under a warrant alleged to have been issued by the board of supervisors of Herkimer county (of which Gray was a member, as supervisor of the town of Herkimer in that county) to the defendant Smith, as collector of the said town.

The following is a copy of the assessment roll annexed to the warrant when it was delivered to the collector Smith, so far as it relates to the plaintiff:

| Names of taxable inhabitants in said town. | No. of village lot. | No. of acres of land. | Description and remarks. | Valuation of real property. | Corrected valuation of real property. | Valuation of personal property. | Total of real and personal property. | Military tax. | Dog tax. | Amount of tax. |
|---|---|---|---|---|---|---|---|---|---|---|
| Bellinger, P. F.. | .. | ¼ | Banking-house. | $1,100 | $1,650 | ........ | $1,650 | .. | .. | $67 90 |
| Bellinger, P. F.. | .. | ¼ | Home lot. | $1,050 | $1,575 | $28,000 | $29,575 | .. | .. | $1,217 03 |
| Bellinger, P. F.. | .. | .... | Circulation, notes and profits. | ...... | ........ | $29,547 | $29,547 | .. | .. | $1,215 86 |

The following facts were established:

One of the assessors of the town did not sign the assessment roll, nor did he verify it, or sign the oath of verification thereto. It was signed and verified by the other two; but they did not make the certificate, or certify to the supervisors, as required by section 30, article 2, title 2, chap. 13, part 1 of the Revised Statutes, but all three assessors met and agreed upon the assessment and assessment roll as it was finally delivered to the board of supervisors, except the verification, and

adjourned to verify it at a future day, but the one who did not sign it failed to attend, and for that reason did not verify it.

When the board of supervisors adjourned, they delivered the said assessment roll, with the warrant annexed to it, to the defendant Gray, the supervisor of the town of Herkimer; and when it was so delivered to him, there were no figures or amounts in the columns opposite the plaintiff's name, numbered 6, 8 and 11, headed, respectively, "Corrected valuation of real property," "Total real and personal property," "Amount of tax."

All the figures, appearing in these columns of the roll at the trial, were inserted therein by the defendant Gray after the board of supervisors finally adjourned, and before he delivered the roll and warrant to the collector, the defendant Smith.

The warrant, issued with the roll to the collector, was signed by the defendant Gray and other supervisors, by signing their individual names thereto. There was no other seal, except the impression on the paper, made with a die, upon which was engraved the words, "Seal. Herkimer County Board of Supervisors."

The following is the finding by the court of the action of the board and the defendant Gray, in reference to the assessment roll and the issuing of the warrant.

The said board equalized the valuation of the real estate by fixing a per centage which should be added to the real estate of said town of Herkimer on said roll, and the per centage was properly computed and added to the valuation of real estate of said roll, according to the determination of said board, in a column headed "Equalized valuation." The said board also determined the amount of State and county tax to be assessed on each town, and to this the supervisors added the amount to be raised by the town, and from these data the supervisors ascertained the amount of each man's tax as contained in said roll, and the same was correctly computed. That the two values of $1,650 and $1,575 set opposite the plaintiff's real estate in said roll, making together the sum of

$3,225, were placed there by the defendant Gray after the adjournment of the said board of supervisors, and such was not the value placed upon the said real estate by the assessors of the town; and it was not the value placed upon the said real estate by the supervisors, except by determining the amount to be added to the valuation of real estate in the town of Herkimer in order to equalize the same with the valuations in the other towns of the county. That in the column headed " Corrected valuation of real property," all the real estate in the town was set down by the defendant Gray, by adding the per centage directed to be added by the board of supervisors in equalizing the valuation, at a valuation fifty per cent higher than the values affixed to the same real estate by the town assessors, and the tax as assessed extended and carried out upon the said assessment roll was, so far as plaintiff's real estate was concerned, and all the parcels of real estate in the town computed upon these increased or corrected values, and not upon the assessors' values, and the tax thus carried out by the defendant Gray was inserted in the eleventh and not in the fifth column of the said roll.

It appeared that the plaintiff had made an arrangement with the collector by which he should be permitted to pay his tax after the expiration of thirty days from the receipt of the warrant. That upon the collector calling for its payment, a package containing United States legal tender notes amounting to the plaintiff's tax and the collector's fees added, was, under the plaintiff's direction, laid by his clerk on the counter before the collector. The plaintiff then forbade the collector taking the package; told him his warrant was not right; that he would make himself liable if he took it, and that he would hold him responsible. The collector then took the package and carried the same away. Defendant Gray instructed Smith to take the said package, which was of the value of $2,526.

The court decided, as matter of law, that the tax warrant issued to said defendant Smith fully justified him in taking the said package of legal tender notes of the plaintiff.

That the defendant Gray was not liable for the conversion of the said package of legal tender notes taken by the defendant Smith; that the plaintiff's assessment of $29,547 opposite the words " Circulation of notes and profits," was a valid and legal assessment; that upon the facts proved it was not requisite that all the assessors should sign the roll or subscribe and take the oath attached to the roll; that it was not requisite to the validity of the assessment that the two assessors should make the certificate required by sec. 30, art. 2, title 2, chap. 13, part 1 of the Revised Statutes; that it was not requisite to the validity of the warrant that each supervisor should attach or affix his individual seal to the said warrant, but that it was sufficient for each supervisor to adopt the impression made upon the said warrant as his seal; that said warrant was sufficiently sealed; and that said warrant was a valid and legal warrant. A separate exception was taken to each of said several findings or conclusions of law.

The said judge further decided that it was illegal to estimate, extend and carry out the tax upon the increased or corrected value of the real estate and not upon the value placed upon the real estate by the town assessors; and that plaintiff's tax was estimated, extended and carried out upon an illegal basis, but that plaintiff, not being injured thereby, could not take advantage of it; to which last ruling and decision the plaintiff excepted, and particularly to that part of it holding that he could not take advantage of it.

Upon those findings he ordered that the defendants have judgment against the plaintiff, and that his complaint be dismissed. Judgment was entered accordingly.

*Francis Kernan* for the appellant. If an invalidity appeared on the face of the warrant or was known to defendant, he is liable. (*Van Rensselaer* v. *Witbeck,* 3 Seld., 517; *Merritt* v. *Read,* 5 Den., 352; *Germain* v. *Waggoner,* 1 Hill, 279.) If the assessment was invalid on its face as to plaintiff, the same result follows, although valid as to all others. (*Johnson* v. *Seam,* 30 Barb., 616; *Chegary* v. *Jenkins,* 1

Seld., 376, 81.) A statute authority which deprives one of his estate must be strictly pursued. (*Bloomer* v. *Burdick,* 1 Hill, 130; *Roukendorf* v. *Taylor's Lessees,* 4 Peters, 349; *Atkins* v. *Kennan,* 20 Wend., 241; *Sharp* v. *Spier,* 4 Hill, 76; *Varick* v. *Tallman,* 2 Barb., 113; *Sharp* v. *Johnson,* 4 Hill, 92.) The assessment roll was not properly verified. (1 R. S., 913, § 25; 3 id., 869, § 29; *Downing* v. *Ruger,* 21 Wend., 178; *Whetford* v. *Scott,* 14 How., 302; *Keeler* v. *Frost,* 22 Barb., 400; *People* v. *Supervisors of Chenango,* 1 Ker., 563.) The board of supervisors have no authority to change the assessment of real estate for the purpose of taxation. (*People* v. *Supervisors of Ulster,* 31 How., 237; 1 R. S., 914; *Talmadge* v. *Supervisors of Rensselaer,* 21 Barb., 612.) The court erred in deciding that this error did not injure plaintiff, and that he could not complain. (*Stroud* v. *Bretter,* 18 Barb., 327; *Alexander* v. *Hoyt,* 7 Wend., 90; *Clark* v. *Hallock,* 16 id., 607.) The warrant was void, not being properly sealed. (*Millett* v. *Baker,* 42 Barb., 215; *Smith* v. *Randall,* 3 Hill, 495.) This action is defendants' only remedy. (*People* v. *Supervisors of Queens,* 1 Hill, 195.)

*C. D. Adams* for the respondent. The payment by plaintiff was voluntary, and he cannot recover. (2 Ker., 99, 116; 2 Sand., 479; 2 Ker., 308; 33 Barb., 147, 152; 13 Abb., 350.) If the warrant was valid on its face the collector was not liable. (*Savacool* v. *Boughton,* 5 Wend., 170; *Beach* v. *Furman,* 9 J., 229; *Chegary* v. *Jenkins,* 1 Seld., 380–1; *Van Rensselaer* v. *Cottrell,* 7 Barb., 127; *Finch* v. *Cleveland,* 10 id., 291; *Hill* v. *Sellick,* 21 id., 207, 211; *Sheldon* v. *Van Buskirk,* 2 Comst., 473.) The seal was adopted by each supervisor, and was sufficient. (*Van Alstyne* v. *Van Slycke,* 10 Barb., 583; 3 Hill, 351; 2 Caines, 1, 7, 42, 55; 2 Hilliard's Abr., 293; 19 Maine, 27.) It is presumed to be the seal of each. (7 N. H., 230.) The impression upon the paper was a sufficient seal. (3 R. S., 5th ed., 687, §§ 75, 77, 80; 5 Duer, 462.) The assessment roll was sufficiently verified. (7 Barb., 134; 3 Den., 245; 8 Barb., 153; 1 Comst., 179; 15 Barb., 471.) The

insertion of extra columns in the roll is a mere irregularity, not vitiating the warrant. (7 Barb., 133; 21 Pick., 64.) The court will assume that facts existed justifying the assessment of personal property. (30 Barb., 620.) The supervisors cannot be held liable for errors of the assessors. (1 R. S., chap. 13, title 2, art. 3, §§ 30, 34; *Beach* v. *Furman*, 9 J. R., 229; *Van Rensselaer* v. *Cottrell*, 7 Barb., 127; *Van Rensselaer* v. *Witbeck*, id., 133.) The equalization of the real estate and determination of amount of tax were judicial acts for which a supervisor is not liable. (*Henderson* v. *Brown*, 1 Comst., 90, 101; *Hill* v. *Sellick*, 21 Barb., 207; *Jenkins* v. *Waldron*, 11 J., 114; 9 J. R., 229; *Easton* v. *Callender*, 11 Wend., 90; *Finch* v. *Cleveland*, 10. Barb., 290; *Butler* v. *Potter*, 17 J., 145; *Randall* v. *Smith*, 1 Den., 214; *Weaver* v. *Devondorf*, 3 Den., 117; *Barhyte* v. *Sheperd*, 35 N. Y., 238; *Osburn* v. *Danvers*, 6 Pick., 98.) The fact that the tax was not extended until after the board adjourned does not invalidate the warrant. (*Talmadge* v. *Supervisors of Rensselaer*, 21 Barb., 612.)

LOTT, Ch. C. In the view I have taken of the question of the defendants' liability on the facts disclosed by the findings of the judge who tried the issues, I deem it unnecessary to inquire into the sufficiency of the assessment roll when it was delivered to the board of supervisors, or whether the warrant in the form it was received by the collector afforded a protection to him in making the collection of the taxes directed thereby to be collected. I shall assume both to have been sufficient, so far as to authorize the board and collector to proceed in the discharge of their respective duties under the law regulating the assessment and collection of taxes. It will consequently only require an examination into the proceedings of the board, and of the defendant as a supervisor of the town for which he was chosen and as a member of the board, to reach a conclusion on the question to be decided on this appeal.

It is made the duty of the board of supervisors in each county, at their annual meeting, to examine the assessment

rolls of the several towns in their county for the purpose of ascertaining whether the valuations in one town or ward bear a just relation to the valuations in all the towns and wards in the county; and they may increase or diminish the *aggregate* valuations of real estate, in any town or ward, by adding or deducting such sum upon the hundred as may, in their opinion, be necessary to produce a just relation between all the valuations of real estates in the county; but they shall in no instance reduce the aggregate valuations of all the towns or wards below the aggregate valuation thereof, as made by the assessors. (1 R. S., p. 395, § 31.) They are also required to make such alterations in the descriptions of the lands of non-residents as may be necessary to render such descriptions conformable to the provisions of the law referred to; and if such alterations cannot be made, they shall expunge the descriptions of such lands and the assessments thereon from the assessment rolls. (§ 32.) After these duties are performed they shall estimate and set down in a fifth column, to be prepared for that purpose, in the assessment rolls, opposite to the several sums set down as the valuations of real and personal estates, the respective sums in dollars and cents, rejecting the fractions of a cent, to be paid as a tax thereon. (Id., § 33.)

They shall also add up and set down the aggregate valuations of the real and personal estates in the several towns and wards, as corrected by them, and shall cause their clerk to transmit to the comptroller, by mail, a certificate of such aggregate valuation, showing separately the aggregate amount of real and personal estate in each town as corrected by the board. (Id., § 34.) They shall cause the corrected assessment roll of each town or ward, or a copy thereof, to be delivered to each of the supervisors of the several towns or wards, who shall deliver the same to the clerk of their city or town, to be kept by him for the use of such city or town. (Id., § 35.)

They shall also cause such assessment roll, or a fair copy thereof, to be delivered to the collector of such town or ward

on or before the fifteenth day of December in each yeaɪ (id., § 36); and to each assessment roll so delivered to a collector, a warrant, under the hands and seals of the board of supervisors, or of a majority of them, shall be annexed, commanding such collector to collect from the several persons named in the assessment roll the several sums mentioned in the last column of such roll opposite to their respective names, and containing directions as to the disposition of the moneys collected; and authority also is given, in case of the refusal or neglect of any person to pay his tax, to levy the same by distress and sale of the goods and chattels of such person, with a requirement to pay over such moneys by a specified time. (Id., § 37.)

It is then provided that, as soon as the board of supervisors shall have sent or delivered the rolls, with such warrants annexed, to the collectors, they shall transmit to the treasurer of the county an account thereof, and it is declared what shall be stated therein; and the county treasurers, on receiving it, are required to charge to each collector the sums to be collected. (Id., § 38.)

I have set forth these several provisions with this particularity for the purpose of showing the nature and character of the duties which are devolved on the several boards of supervisors.

It is evident that those imposed by sections 31, 32 and 33 are *quasi* judicial. They require the exercise of judgment in determining what changes shall be made in the valuations of the real estate in the several towns and wards to produce a just relation to each other, and, in the descriptions of the lands of non-residents, to make them conformable to law; and a decision as to the amount of tax to be paid on the several sums at which real and personal estates in the roll are valued is dependent on the amount of money that is required to be raised for the payment of different claims against the county, and towns, and cities, and other liabilities which are to be discharged; all of which must be passed on and settled by them. After those different questions are determined, the

mere act of giving them effect by the insertion of what is necessary may be clerical; but when such insertion is made it is the result of such judicial determination.

It is also apparent, from the several provisions considered and construed in connection, that all of the duties required to be performed under these sections shall be discharged before those specified in the subsequent sections hereinafter mentioned are to be done. The amount of tax to be paid is to be ascertained after the requirements of sections 31 and 32 are complied with, and is to be "set down in a fifth column, to be prepared for that purpose in the assessment roll;" and when all that is done, and not till then, the assessment roll is *complete*. Then duties of a mere ministerial character are imposed by sections 35, 36, 37 and 38. One of those, and the only one now material to be noticed, is that required by sections 36 and 37. The warrant that is to be issued must be annexed to the assessment roll, *as completed*, or to a fair copy thereof; and it is without meaning and incapable of execution unless so annexed. It refers in express terms to the several persons named in the roll, and to the several sums mentioned in the last column thereof opposite to such names, meaning the amounts of tax to be paid by them respectively. After such warrant is delivered, in the form so specified—*complete* and *perfect in every respect*—and in a condition to be executed, the *board* is further directed to transmit to the treasurer the account specified in section 38. It appears to be a necessary result of the several requirements made of the *board*, that the assessment roll and warrant in question were neither of them such documents as the law required when they passed from the board and made it incumbent on them to deliver to the collector. In fact, they were neither of them of any legal effect, and what was subsequently done by the defendant was wholly unauthorized; and the warrant given to the collector, conceding it to be sufficient in form to protect *him*, was known by the defendant, or must be assumed to have been so known, to be illegal and insufficient to authorize a levy under it. He had signed it, and thereby (and

also by his verbal direction at the time the package was taken) directed it to be done. He cannot be protected against that act by the warrant or by what the other members of the board, or the *board as such*, may have directed or authorized him to do in making the additions to the roll after its delivery to him.

There is no color or ground for saying that the plaintiff made a voluntary payment of the money taken by the collector. The whole course of proceeding at the time shows not only that it was not such, but that he expressly forbid the taking, and notified the collector that he would be held responsible therefor. The preceding views render it unnecessary to express any opinion whether the seal, or impression on the warrant intended for a seal, was sufficient or not, within the peculiar requirement of the statute in that respect. It is a question involved in doubt, and deserves the careful consideration of supervisors before concluding it to be sufficient.

My conclusion, therefore, is that the judgment appealed from is erroneous, and that it should be reversed and a new trial ordered, costs to abide the event.

REYNOLDS, C. I am in favor of a new trial in this case for the following reasons :

(1.) The warrant for the collection of the tax was void on its face.

The assessment against the plaintiff of $29,547, on account of "circulation notes and profits," was plainly illegal, and in making it the assessors exceeded their jurisdiction. It seems to have been intended to assess the plaintiff for notes issued by himself and for which he was a debtor, and that is simply absurd.

(2.) The assessment roll was not verified as required by statute, and that omission is fatal to its validity.

The provisions of a statute by which a public officer may condemn the property of an individual must be strictly observed.

(3.) The board of supervisors failed to discharge its duty.

The warrant was imperfectly sealed, and was left incomplete in several respects when the board adjourned. They had not fixed the " corrected valuation of real property," or inserted the " total of real and personal property," or extended the tax thereon.

All this was done by the defendant, Gray, and he had no legal authority to do it. It could be done only by the board of supervisors in corporate meeting duly convened, and the power was not and could not be delegated. If the warrant had been left as the supervisors left it when they finally adjourned, no tax could have been collected of the plaintiff. The defendant undertook, without authority of law, to do what the whole board of supervisors of the county of Herkimer ought to have done. Having finished the work he handed the papers to the collector of the town of Herkimer, and by virtue of it the property of the plaintiff was taken to the amount inserted in the warrant by the defendant. If he had inserted five times more, if the judgment of the Supreme Court is correct, the plaintiff could have no remedy. But the defendant is liable for his illegal act, by which the plaintiff has sustained injury.

It was suggested on the argument that this manner of doing business in respect to the assessment and collection of taxes was customary in the county of Herkimer, and therefore should be approved.

A custom to disregard a statute must become very obstinate before courts of justice will approve and practically repeal an act of the legislature.

There should be a new trial.

All concur in opinion of LOTT, Ch. C., EARL, C., not sitting.

Judgment reversed.