FIRST NAT. BANK OF UTICA *v.* WATERS and another.

*(Circuit Court, N. D. New York.* May 10, 1881.)

1. NATIONAL BANKS—TAXATION—REV. ST. § 5219.

The exemption from taxation of the shares of various corporations, under the provisions of a state statute, does not exempt "moneyed capital in the hands of individual citizens," within the meaning of section 5219 of the Revised Statutes, relating to the taxation of national bank shares.

2. SAME—ASSESSMENT ROLL—CLERICAL OMISSION.

The omission of a city clerk to extend upon the assessment roll the amount to be paid by each shareholder, until after such roll has been delivered to the city treasurer, does not render the taxation of such shares void.

3. SAME—TAX COLLECTOR—WARRANT.

In such case, therefore, the tax collector is protected by his warrant, when both such warrant and assessment were apparently regular when they came to his hands.—[ED.

In Equity.

*Miller & Finke* and *Ward Hunt, Jr.,* for complainant.

*Alfred C. Coxe,* for defendants.

WALLACE, D. J.   The complainant moves for a preliminary injunction to restrain the defendants from the collection of taxes assessed against its several shareholders, on the ground —*First,* that the laws of this state impose one rule of assessment and taxation upon shareholders in corporations other than banking associations, and another upon banks, whereby a higher taxation incidentally rests upon the latter, and as to the shareholders of national banking associations thereby violates the rule of uniformity prescribed by section 5219, Rev.

St.; and on the *second* ground that the particular tax in this case was illegal because of a departure in imposing it from the statutory requirements prescribed for the assessment and collection of taxes. The defendant Waters is tax collector for the ward in the city of Utica in which the complainant's bank is located. The defendant Kohler is treasurer of Oneida county, and has no control over the collector and no part in collecting the tax until the collector has returned his warrant unsatisfied. While he may be a proper party, he is not a necessary one to the controversy, and it is to be determined as though the collector were the sole defendant.

Upon the first ground on which the motion is predicated, some remarks in the opinion in *Albany City Bank* v. *Maher*[*] may suggest the inference that I was disposed to hold that, if the laws of the state did make a discrimination for the purpose of taxation between shareholders in national banks and shareholders in corporations generally against the former, the taxation under such laws would be illegal as contravening the law of congress. But that case did not involve the point now made, and was argued and considered solely upon the provisions of the tax laws of 1880, and without regard to that section of the general laws which exempts shareholders from taxation when the corporation is taxed upon its capital stock or personal property. Assuming that bank shareholders are taxed by the laws of this state at a higher rate than is imposed upon shareholders in other than moneyed corporations, the question now is, are they taxed at a greater rate than is assessed "upon moneyed capital in the hands of individual citizens of the state," within the meaning of the law of congress? Does the taxation imposed by the laws of the state upon individuals, on account of that part of their personal property represented by shares of stock in corporations other than moneyed corporations, constitute the test and rule by which to determine what taxation is imposed upon moneyed capital in the hands of individual citizens; or is that test to be found in the laws which tax personal prop-

*6 FED. REP. 417

erty generally? Or does the taxation of neither of these subjects of taxation furnish the test, and is it to be found in the taxation imposed by the laws of the state upon that part of the personal property of its citizens which consists of money or shares of stock in moneyed corporations? These questions have been answered adversely to the complainant's theory in several cases which have been considered by the supreme court of the United States.

It was the object of the act of congress to permit the state, which creates corporations, or allows them to exercise their franchises within its limits, to tax them as its own policy may dictate, and by its system to foster them by light taxation, or discourage them by onerous taxation, without thereby establishing a rule to control its taxation of the shares held by its citizens in national banks. The states have no power to tax the capital of national banking associations, but are granted the power to tax the moneyed capital of its citizens invested in such shares to the same extent as though it remained uninvested therein. The citizens of a state may invest their moneyed capital as they choose, and must accept the measure of taxation which is imposed by the state on the character of the investment they have selected. If they choose to invest it in corporations or joint-stock companies, they must submit to have it taxed upon the principles which the state has adopted or may adopt for the taxation of such corporations or joint-stock companies. As the policy of the state may dictate different modes and measures of taxation for different classes of corporations, it would be difficult, if not impossible, to ascertain the measure of taxation for national bank shares by that prescribed for capital invested in other corporations. Thus, while life insurance companies are taxed by a franchise tax, and taxation of the shares exempted, other corporations are taxed upon their capital stock; while in others still the shareholders are taxed upon their shares. Which class of corporations would furnish the rule for taxation of shareholders in national banks? The section should be so construed as to obviate this difficulty, and prescribe a rule capable of practical application.

Recognizing the force of such considerations, it has been held that the state, by exempting certain classes of taxable property partially or wholly from taxation, does not thereby adopt a rule of taxation which must be applied to national bank shares under the law of congress.   As was said by the chief justice in *Hepburn* v. *The School Directors*, 23 Wall. 485 : "It could not have been the intention of congress to exempt bank shares from taxation because some moneyed capital was exempt."

In *People* v. *Commissioners*, 4 Wall. 244, a deduction or allowance was made under the laws of the state in assessments against individuals and insurance companies on account of investments in the securities of the United States, while none was made in assessing the relator upon his shares in a national bank, and the tax was sustained.   In *Gorgas' Appeal*, 79 Pa. St. 149, the state laws exempted all mortgages, judgments, recognizances, or moneys owing upon articles of agreement for the sale of real estate, and it was held that such exemption did not preclude the state from taxing national bank shares to the same extent that moneyed capital other than of the character exempted was taxed.   In *Hepburn* v. *The School Directors*, 23 Wall. 480, the precise question presented in *Gorgas' Appeal* was ruled in the same way. When an exemption or deduction is allowed by the laws of the state, which is of such general operation as to affect all classes of taxable property, it must be allowed in assessing shares in national banks, because it necessarily is the rule of assessment.   The deduction was of this character in *Albany Exchange National Bank* v. *Hills*,* and because it was so recognized in assessing the national bank shares the assessment was declared void.

Moneyed capital cannot be said to be exempt from taxation by the laws of this state because that portion of it which is invested in the shares of various classes of corporations is exempt.   Not only does the state tax moneyed capital generally, but the capital invested in these corporations is taxed in the hands of corporations.   If thereby any inequal-

*See 5 FED. Rep. 248.

ity is produced, more would result if shareholders in national banks were wholly relieved from taxation. Precisely what is signified by the language of the act of congress which declares that the taxation shall not be at a greater rate than is imposed by the laws of the state upon "moneyed capital in the hands of individual citizens," has never been judicially declared, although it has several times been determined what was not such moneyed capital.

In Limberger v. Rouse, 9 Wall. 468, it is stated that the enactment was intended to place national banks on an equality with state banks as to the taxation of their shares by the state. In Hepburn v. School Directors, 23 Wall. 484, it is said that moneyed capital, as used in the section, signifies something more than money lent out at interest, and comprehends investments in stocks and securities. In Adams v. Mayor of Nashville, 95 U. S. 19, the opinion is that "the act was not intended to curtail the state power on the subject of taxation. It simply required that capital invested in national banks should not be taxed at a greater rate than like property similarly invested."

It would seem that the term "moneyed capital in the hands of individual citizens" more aptly describes ready money, or capital invested in private banking, than it does capital invested in manufacturing corporations, insurance companies, and the like. As originally used in the national banking act, (section 41,) it signified something different from capital invested in state banking corporations, because it was provided originally that the taxation by the states should not exceed that imposed on moneyed capital in the hands of individual citizens, or that imposed "upon the shares in any of the banks organized under authority of the state." 13 St. at Large, 112. It is hardly appropriate to call shares in manufacturing or insurance corporations "moneyed capital in the hands of individual citizens;" and if it had been intended to include all capital thus invested, it would have been easy to do so under some such comprehensive term as personal property. It seems more reasonable to believe that while congress was legislating to place national bank shares on an equality

with state bank shares, it was thought expedient to place them on an equality also with the capital employed in private banking, and thus relieve them from the danger to which corporations are sometimes exposed by local prejudices. But whether this view is correct or not, within the cases referred to, the laws of this state for the taxation of general corporations and the exemption of their shares do not furnish the rule for the taxation of moneyed corporations, or of capital invested in private banking, or of personal property generally; and the complainant must fail upon this branch of its case.

As to the second ground upon which the motion rests, as the collector is a ministerial officer, who must obey the mandate in his hands for the collection of the tax, the complainant cannot succeed, unless the tax is void, because illegal, as distinguished from irregular. The assessment roll and warrant annexed for the collection of the taxes constitute the mandate of the officer, and the legality of his proceedings under them may be determined by the principles which apply to the case of an officer acting under a judgment and execution.

The rule in this stated in *Erskine* v. *Hohnback*, 14 Wall. 613:

"If an officer or tribunal possess jurisdiction over the subject-matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to a ministerial officer is regular on its face, showing no departure from the law or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer against any prosecution which the party aggrieved may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process issued."

Tested by this rule, the collector in the present case is protected by his warrant in collecting the tax.

Doubtless the fair construction of the Revised Statutes and the charter of the city of Utica requires that when the assessment roll for a given ward is delivered by the board of supervisors to the treasurer of the city of Utica, the amount of the tax paid by each tax payer shall have been extended and shall appear upon the roll. But everything had been done

which was required to give the board of supervisors' jurisdiction for the purposes of the equalization of taxes, and for carrying out the details of the assessment which the assessors had made. The board of supervisors had determined the rate, and the assessors had determined the valuation. It was the duty of the city clerk of Utica to extend the tax. He omitted to do so as to the stockholders of the complainant until after the roll had been delivered to the treasurer. From the nature of the act, and from the character of the official to whom it is entrusted, the act is evidently a clerical one. No substantial injury could result from the omission to perform it. The computation and insertion of the amount of the tax, after the roll had been delivered to the treasurer was an irregularity. It was done by the person whose duty it was to do it. It was done after all the *data* to be ascertained by the assessors and the board of supervisors had been ascertained according to law. In effect and character it was as though the clerk of a court, in entering a judgment, had computed the sum adjudged due when the verdict of a jury or the decision of the judge had determined everything essential to the judgment except the result of a mathematical computation. No one would contend that such a judgment would be void. When the assessment roll and warrant came to the hands of the collector they were apparently regular. In the case of the *Albany City Bank* v. *Maher*,* the assessors had omitted to perform an act prerequisite to their authority to make any assessment, and the assessment was, therefore, void. Here it was simply irregular. In *Bellinger* v. *Gray*, 51 N. Y. 610, and in *Westfall* v. *Preston*, 49 N. Y. 349, the defect in the proceedings by which the tax was imposed appeared in the papers which constituted the process of the collector for collecting the tax.

The complainant cannot succeed upon either branch of its case. Motion for injunction denied.

*See 6 FED. REP. 417.