THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT, *v.* DWIGHT HAGADORN AND LOREN HAGADORN, RESPONDENTS.

*Sale of land for taxes — duty of the board of supervisors to extend the tax — an illegality in any of the taxes, for which land is sold, vitiates the whole sale —1855, chap. 427.*

This action was brought to recover damages for the wrongful conversion of logs which were upon land to which the plaintiff claimed title under a deed from the comptroller of the State, made in 1877, at a sale had for the non-payment of the taxes levied thereon in the several years from 1866 to 1870. It appeared that during the years 1868, 1869 and 1870 the board of supervisors, after fixing the total equalized valuation of the town and determining the tax to be raised therein, had signed, sealed and delivered to the supervisor of the town their warrant for the collection of the tax, and had affixed the same to the assessment-roll and adjourned *sine die,* having previously directed the said supervisor to extend the taxes against the persons and property named therein. Neither the warrant nor the assessment-roll contained a statement of the rate of taxation.

*Held,* that the statute (sec. 33 of 1 R. S., m. p. 395) required the board itself to estimate and set down upon the roll the sums to be paid as a tax upon the valuations as therein set down, and that it could not delegate the power so to do to one of its members.

*Bellinger* v. *Gray* (51 N. Y., 610), followed; *Bradley* v. *Ward* (58 id., 401); *Colman* v. *Shattuck* (62 N. Y., 348) ; *First National Bank of Utica* v. *Waters* (7 Fed. R., 152), distinguished; *Tallmadge* v. *Supervisors* (21 Barb., 611), overruled.

That the fact that the validity of the rolls in the years 1866 and 1867 was not attacked did not aid the plaintiff, for the reason that as the statute did not allow the owner to redeem from the legal taxes and treat the sale for the illegal taxes as a nullity, the illegality of a part of the taxes, for the non-payment of which the land was sold, vitiated the whole sale.

APPEAL from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

The action was brought to recover damages for the wrongful taking of logs from a lot in the town of Stratford, Fulton county, which the plaintiff claimed to own.

The plaintiff claimed title under a deed from the comptroller of the State, given at a sale of the land for certain unpaid taxes more particularly specified in the following opinion. Neither the warrants or the assessment-rolls to which they were attached contained any statement as the rate or per centage of the taxes levied.

*D. O'Brien,* attorney-general, for the People.

*George W. Smith,* for the respondents.

LEARNED, P. J.:

The plaintiff's title rests upon the comptroller's deed. This was in proper form and was in pursuance of a sale made in 1877 for taxes in the years from 1866 to 1870. The defendants claim to have shown a defect in the levy of the taxes for the years 1868, 1869 and 1870. During those years one Bliss was supervisor of the town where the lands were situated. In each of those years, after the board of supervisors had fixed the total equalized valuation of the town, and had determined the tax to be raised therein, and had signed, sealed and delivered to the supervisor of the town their warrant for the collection of the taxes, and had affixed the same to the assessment-roll, they adjourned *sine die,* having previously directed said Bliss, the supervisor, to extend the taxes against the persons and property named therein. After the adjournment Bliss, in pursuance of such directions, extended all the taxes on the roll and delivered the same with the warrant to the collector. The question is whether this made the warrant void and, therefore, vitiated the future proceedings to enforce the tax. There is no other irregularity or defect than this.

If we look at the provisions relative to taxes, we shall find nothing which requires the warrant or the corrected assessment-roll to contain a statement of the rate of taxation. (1 R. S., m. p. 395.) Section 31 provides for increasing or diminishing the aggregate valuations of real estate, and section 32 for altering descriptions of

lands of non-residents or expunging them. Section 33 then requires the board of supervisors to estimate and set down in a fifth column, opposite the several sums set down as valuations, *the respective sums* to be paid as a tax thereon. And section 37 requires that the warrant shall be annexed, requiring the collector to collect from the several persons the *sums mentioned* in the *last column*.

The question there presented to us is whether the estimating and setting down in the fifth column of the sums to be paid as a tax, is a merely clerical duty which may be performed, after the final adjournment of the board, by any person to whom they may intrust it. What the per centage is, probably appears in the record of their meetings. But so far as the collector is concerned, he is simply to collect the amounts stated in the fifth column, without any right to inquire whether they bear a uniform ratio to the valuations. The expression "extending the tax" is not in the statute. So that there is nothing in the language of the statute implying that the duty of the board is ended when they have fixed the rate of taxation and signed a warrant.

In the case of *Bellinger* v. *Gray* (51 N. Y., 610) the board had equalized the valuation of the real estate by having established a per centage which should be added to the valuation of the town. The board had also determined the amount of State and county taxes and had added the amount to be raised by the town. They delivered the assessment-roll and warrant to the supervisor of the town. Subsequently and after the adjournment he made the necessary computations according to the per centage established by the board and inserted the proper results in the assessment-roll. That case is closely analogous with the present. It is true that the board of supervisors in that case, after establishing a per centage to be added for the purpose of equalization, left the labor of computing that, as well as the labor of computing the tax, to the supervisor. But one was as much a matter of mathematical computation as the other. The board had decided to add fifty per cent to the valuation of the town ; and then had determined the rate of taxation at (say) four per cent. Now, it was as much a clerical matter to add fifty per cent to the valuation of each piece of real estate as to compute four per cent on the total value when thus increased. Yet the court held that the assessment and warrant were void. And they said that the

merely ministerial duties are those imposed by sections 35, etc. They notice, in confirmation of the opinion, that the assessment-rolls must be *complete* before they are delivered ; that by section 38, as soon as the board has delivered the rolls and warrant to the collector, they are to transmit to the county treasurer an account thereof stating, among other things, the amounts the collectors are respectively to collect, and the county treasurer, on receiving the account, is to charge each collector with the sums to be collected by him. Therefore the board must have the rolls, with the tax to be collected of each person stated therein, before they can send this statement, which is the aggregate of those taxes.

In the case of *Bradley* v. *Ward* (58 N. Y., 401) the case just cited is referred to without criticism. An offer was there made to show that when the warrant was executed the amounts were not inserted, but that they were afterwards inserted by one Brick. The court said that the offer was somewhat vague ; that the circumstance of signing first and filling the amounts afterwards, *if done by the board or their direction at the time*, would not invalidate. And the court further remarked that it might be doubted whether such an irregularity could be urged *against the collector*, that action being against him.

The special term case of *Tallmadge* v. *Supervisors* (21 Barb., 611), must yield to these two decisions. *Colman* v. *Shattuck* (62 N. Y., 348) is not inconsistent with them. *Overing* v. *Foote* (43 id., 290) does not apply. The plaintiffs cite *First National Bank of Utica* v. *Waters* (7 Fed. Rep., 152), as exactly in point. But the language of the court there points out the difference. The court say : " It was the duty of the city clerk of Utica to extend the tax. * * * The computation and insertion of the amount of the tax, after the roll had been delivered to the treasurer was an irregularity. *It was done by the person whose duty it was to do it.*" That will be understood by reference to chapter 539, Laws 1880, section 1 ; amending (among others) section 134, chapter 18, Laws 1862. By this it will be seen that it is the duty of the city clerk of Utica to insert the tax in the proper column. And by further reference it will be found that after the roll has been delivered by him to the city treasurer, it is the city treasurer who issues a warrant to the collector. Thus, in the case cited, the insertion of the tax

was done by the person whose duty it was to do it; and it was done before any warrant had been signed or delivered. In the present case the insertion of the tax was not done by the person whose duty it was to do it; and it was done after the warrant had been signed and delivered.

Of course the individual supervisor has no more authority to alter or add to the warrant than any other person would have. So that the question is whether the board of supervisors can issue a warrant in blank, authorizing some person to fill in the proper amounts to be collected.

If the form of the warrant had directed the collection of four per cent (or any other per centage) on the corrected valuation, and then the supervisor had made a computation of the per centage, a different question would be presented. But, as it is, we think that the decisions above cited are conclusive.

Another point is made, viz., that admitting the warrants and rolls for the years 1868, 1869 and 1870 were void, yet there was no evidence that the warrants and rolls for 1866 and 1867 were not valid; that the sale was for all of these taxes, and was, therefore, valid. If we examine chapter 427, Laws 1855, we shall find that, by section 44, so much of each parcel assessed is to be sold as will pay the taxes, interest and charges. If there is no bid, the comptroller is to bid in for the people. (Sec. 66.) The amount which must be paid for redemption is the amount mentioned in the certificate, with ten per cent interest (sec. 50); that is, the amount of the taxes, interest and charges, and ten per cent interest thereon. It follows, then, that there can be no separation as to the taxes of several years. The sale is entire, and the amount bid, as well as the amount required to redeem, must include the illegal as well as the legal taxes. The notice required to be given for redemption must state an amount which includes all the taxes, legal or illegal, for which the lands were sold. (Sec. 61.) The owner could not redeem from the legal taxes, and treat the sale as a nullity in respect to the illegal taxes. We think, therefore, that the illegality of some of these taxes vitiated the sale.

The judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOCKES and LANDON, JJ.

Judgment affirmed, with costs.