JOHN G. CROMMELIN and Others, Plaintiffs, v. MAC FINN, Defendant.

Supreme Court, Saratoga County, April 9, 1927.

Taxation — provisions of charter of city of Saratoga Springs (Laws of 1915, chap. 229, as amd. by Laws of 1916, chap. 229) as to preparation of tax rolls, mandatory — failure to set down tax opposite each parcel is jurisdictional defect — employee had no right to correct defect prior to tax sale — defect not cured by tax deed — owner is entitled to judgment in action in ejectment.

The provisions of the charter of the city of Saratoga Springs (Laws of 1915, chap. 229, as amd. by Laws of 1916, chap. 229) as to the preparation of assessment rolls are mandatory.

Under section 89 of the charter, providing that the commissioner of finance shall
apportion and set down opposite the several valuations of property in each roll
the sum to be paid as the taxes thereon, the failure to set down any sum whatever
opposite any of the first five parcels of property on a tax roll, as the tax to be
paid thereon, and the setting down of the total tax opposite a subsequent parcel,
is a jurisdictional defect.

An employee in the office of the commissioner of finance had no authority upon
his own initiative, in the preparation for tax sales, to correct said defect. Nor
were said defects cured by subsequent tax deeds.

Accordingly, no valid tax was levied on the parcels of property opposite which
there was a failure to state the taxes, and consequently no lien was ever created
upon such parcels, and, therefore, the owners thereof are entitled to judgment
in an action in ejectment.

ACTION in ejectment to recover unimproved lots in the city of
Saratoga Springs, involving validity of proceedings leading up to
tax sale.

*Butler, Kilmer, Hoey & Butler* [*Walter P. Butler* of counsel], for
the plaintiffs.

*Leary & Fullerton* [*Edward H. Gilhouse* of counsel], for the
defendant.

HEFFERNAN, J. This case is submitted on an agreed statement
of facts. The action is in ejectment for the recovery of two
unimproved lots located in what is known as the outside tax district
in the city of Saratoga Springs. Section 3 of the charter of the
city (Laws of 1916, chap. 229, amdg. Laws of 1915, chap. 229)
divides the city into three tax districts to be known as the " city tax
district," the " inside tax district," and the " outside tax district."
The lots in question are designated upon the official tax map as section
10, block D, lot 16, and section 11, block C, lot 2. The answer,
in addition to a general denial, alleges that the plaintiffs are estopped
from questioning the regularity and validity of the proceedings
leading up to the tax sale and through which the defendant's title
is derived. The method of assessing, levying and collecting taxes
in the city is contained in the charter. At the time set forth in
the complaint tax maps of the city, duly adopted pursuant to the
provisions of the charter for the inside and outside tax districts,
were in existence.

On May 10, 1920, the lots involved were sold at a tax sale and
bid in by the city for the term of one thousand years for the unpaid
tax of 1919. The charter (§ 93) provides that when taxes or
assessments are due and in default the lands must be sold at public
auction for the lowest term of years for which any person shall
offer to take the same in consideration of advancing such taxes,
assessments, penalties and expenses. The disputed question is as

to the validity of the two tax deeds and the legality of the proceedings which culminated in the sale of the properties.

The plaintiffs, who are residents of the city of Montgomery in the State of Alabama, were the owners of seven separate and distinct parcels of land, no one parcel adjoining another, located in the city of Saratoga Springs which were assessed in the year 1918 for tax purposes. These tracts were separately assessed in the name of John G. Crommelin, one of the plaintiffs, in a column, one tract under another, with a description and the assessed valuation set opposite each tract. The lands which are the subject of this litigation are the first and fourth of the seven in order on the assessment roll. The first, second, third, fourth and sixth of such parcels were in the outside tax district of the city, the fifth parcel was partly in the outside and partly in the inside tax district and the seventh parcel was in the inside tax district.

The commissioner of accounts acts as assessor. It is his duty to annually prepare an assessment roll in accordance with the provisions of the Tax Law for State and county taxes. The city council, composed of the mayor and the various commissioners, hears grievances. In the year 1918 the assessor prepared the assessment roll whereon he separately assessed each parcel of land in the manner required by law. After the preparation of the assessment and after making provision for the ascertainment of the budget, the charter prescribes how the tax against each parcel of land shall be entered on the roll. That provision is found in section 89 of the charter (Laws of 1916, chap. 229), and reads as follows: " Thereupon the commissioner of finance shall apportion and set down opposite the several valuations of properties in each roll the sum to be paid as the tax thereon, and add all other liens and assessments."

It is not contended that the assessor omitted any procedure necessary to make a valid assessment or that the commissioner of finance committed any error until he reached a point where he was required to apportion and set down opposite the several valuations of properties in each roll the sum to be paid as a tax thereon. He did not set down any sum whatever opposite any of the first five parcels as a tax to be paid thereon. Opposite the sixth parcel in the column headed " highway tax " appear the figures 51 and opposite the seventh parcel there are found in the column headed " State and county " the figures 132.84, and in the column headed " city tax " the figures 213.34, and in the column headed " total tax, interest, penalties and fees " the figures 397.08. A different tax rate prevailed in each of the districts, the rate for the outside tax district being $2.24 per $100 valuation, and the rate for the

inside tax district being $5.14 per $100 valuation. The highway rate was $.34 per $100 valuation. These rates did not appear upon the assessment rolls. Taking the rate of taxation, it is quite manifest what the commissioner of finance did. The total assessed valuation of the first six parcels on the roll was $15,000. Multiplying that by the highway rate of $.34 we arrive at the figure 51 which the commissioner of finance set down opposite the sixth parcel and which was not the correct highway tax on that parcel but corresponded to the sum of the highway tax on the six parcels if correctly apportioned and set down. The sixth parcel was assessed for but $650 and the highway tax thereon should have been $2.21. The statute, as we have seen, directed the commissioner to apportion and set down opposite the several valuations the sum to be paid thereon, but instead of doing this he put down the total highway tax opposite the sixth parcel. When he came to the State, county and city tax he pursued the same method and set down opposite the last parcel what he figured would correspond to the sum of the taxes on the seven parcels if correctly apportioned. When the apportionment and extension by the commissioner of finance were completed, the charter (section 89) provides that " the council shall confirm the rolls and enter in its minutes the day, hour and minute of such confirmation, and from that time the said taxes and assessments shall, respectively, be a first lien upon the property upon which the same is levied." The roll as completed was confirmed by the council on the 6th day of June, 1919. After such confirmation the charter provides at section 89: " Thereupon the rolls shall be delivered to the commissioner of finance for collection." They were so delivered and thereupon the commissioner proceeded to advertise and receive the taxes. No tax was paid upon the two parcels in question and the commissioner proceeded to advertise and sell them in satisfaction of the liens. In preparation for the tax sales an employee in the office of the commissioner, charged with the duty of collecting taxes, evidently realizing that he could not sell the seven separate parcels in bulk for the total taxes set down opposite the last parcel, upon his own initiative and without any authority, express or implied, assumed to apportion the total tax and inserted in pencil in the roll the result of his figures opposite the several parcels. Having thus arbitrarily obtained certain figures for each parcel, the premises were sold, parcel 10-D-16 for $55.30 and parcel 11-C-2 for $25.14. On June 1, 1925, the commissioner of finance issued to the city certificates of such sale and on the same day assigned the certificate for lot 11-C-2 to the defendant and the certificate for the other lot to one Sheldon. The certificates were immediately surrendered and a deed of lot

11-C-2 was executed and delivered to the defendant and a like deed of lot 10-D-16 was executed and delivered to Sheldon. Thereafter Sheldon transferred the premises which he purchased at the tax sale to the defendant.

The learned counsel for plaintiffs contend that the defects referred to are jurisdictional and were not cured by the deeds. The defendant asserts that these defects are mere irregularities and have no vitiating effect. Thus is presented the question in what category do these defects fall?

I am satisfied that the plaintiffs must prevail and that there was a fundamental defect in the proceedings resulting in the tax. There was no specific recorded tax against the lands in question. It is only by a process of investigation and computation that one could ascertain what the tax ought to be. The rate of taxation did not appear upon the roll and inquiry would have to be made elsewhere to ascertain the rate. The statute does not purport to make an unknown figure or a figure which can only be ascertained by investigation and computation a lien upon the land. It directs the exact figure to be set down opposite the parcel upon which it is to be a charge and it is only this figure which becomes a lien. Here, we have a plain direction of the statute that each separate parcel of land shall be separately assessed and that the tax on each separate parcel shall be set opposite it and that the sale must be of each separate parcel for the installment of the tax due thereon. The roll discloses seven parcels, each separately assessed, but no tax whatever set opposite any of the first five. No tax can be sustained as valid unless it is levied in accordance with the letter of the statute and a failure substantially to comply with the statutory requirements is a fatal omission invalidating the tax. In order that a tax may attach as a lien upon particular property it is necessary that there shall have been a valid assessment of it, complate in all essentials and certain and definite in respect to describing the property, the owner and the amount of the tax. The power to assess property for the purpose of taxation and to levy taxes is strictly statutory. A substantial compliance with those statutory provisions defining and regulating the exercise of it, which are of the substance of the procedure and are designed for the protection of the taxpayer and the preservation of his rights, is a condition precedent to the validity of the tax. These provisions are mandatory. (*Lancaster S. B. I. Co.* v. *City of New York*, 214 N. Y. 1; *Merritt* v. *Village of Portchester*, 71 id. 309; *Thompson* v. *Burhans*, 61 id. 52.) The defect complained of here is in the procedure in connection with the completion of the roll. To complete a valid assessment it is necessary that the amount of the tax on each

listed item of property shall be computed and extended on the roll in accordance with the statutory provisions relative thereto and until this is done no legal liability attaches. The duty of making this computation and entry is ordinarily a judicial duty of the proper board or officer and cannot be delegated to a third person.

The able counsel for defendant contend, however, that the failure on the part of the officials charged with the assessment and collection of taxes to observe that strictness in procedure required by law tended in no degree to prejudice the rights of the plaintiffs. The question of jurisdiction is not dependent upon whether or not injury was sustained. That which the Legislature has directed, the courts cannot declare immaterial. (*Merritt* v. *Village of Portchester, supra; Lockwood* v. *Gehlert,* 127 N. Y. 241; *Sanders* v. *Downs,* 141 id. 422; *May* v. *Traphagen,* 139 id. 478.) The collection of a tax may always be resisted when there is no legal foundation for it or when the proceedings upon which it is based were without jurisdiction. It can hardly be said that the defects complained of resulted in no injustice to the plaintiffs.

The property is required to be sold for the lowest term of years for which any person shall offer to take the same. The amount which a bidder is required to advance, to a certain extent, will influence his bid. Then, too, the very fact that the bidders knew of the existence of these defects may have deterred them from bidding at all, thus compelling the city to bid in these properties for one thousand years each. The taxpayer could not tell from an examination of the rolls the amount of the tax to be paid on any of the first five parcels. The amount of the tax set opposite the sixth and seventh parcels is concededly excessive. If an owner examined the roll and found no assessment against any of the first five parcels and an excessive charge against the sixth and seventh tracts he might very well conclude to abandon the latter two, especially where they are unimproved, and feel entirely secure in the belief that the other parcels were not subject to any tax lien. The statute gives to the property owner a grievance day as to his assessment only. He may appear on that day and object to the valuation put upon his land. It is after grievance day that the tax is extended and becomes a lien. Immediately after the taxes are extended upon the roll it is confirmed by the council and delivered to the commissioner of finance for collection. The jurisdiction of the taxing officers thereafter to alter or change the roll is ended. It has completely passed out of their hands. (*People ex rel. Lorillard* v. *Supervisors of Westchester,* 15 Barb. 607; *People ex rel. Chamberlain* v. *Forrest,* 96 N. Y. 544.) Consequently

after the confirmation and return of the roll the commissioner of finance had no further control over it and had no authority to alter or amend it except as concerned the correction of mere informalities or clerical errors. If he had no authority to make changes it logically follows that the clerk in his office was without power to make alterations. On the argument defendant's counsel sought to justify the procedure in the office of the commissioner of finance because this practice has been pursued for many years. A like contention was made to the Court of Appeals in *Bellinger* v. *Gray* (51 N. Y. 610) and was answered by Judge REYNOLDS as follows:

" It was suggested on the argument that this manner of doing business in respect to the assessment and collection of taxes was customary in the county of Herkimer, and therefore should be approved.

" A custom to disregard a statute must become very obstinate before courts of justice will approve and practically repeal an act of the Legislature."

After the confirmation of the roll by the city council the only power which the commissioner had was to collect the taxes. In default of payment he was directed to publish a notice of sale with the installment due, that is, the installment appearing upon the roll. (Charter, § 93.) This he could not do because there was no installment on the roll opposite the first five parcels. Such a departure is certainly more than a mere irregularity. (*May* v. *Traphagen, supra; People* v. *Hagadorn,* 104 N. Y. 516; *People* v. *Inman,* 197 id. 200; *People* v. *Ladew,* 237 id. 413.)

In *May* v. *Traphagen* (*supra*) the action was to recover possession of certain premises in the city of Brooklyn. The plaintiff's title was derived at a tax sale. The contention there was that the taxes were not legally assessed and hence the sale was ineffectual. The charter of the city required the assessors to make a separate statement of the value of the land to be assessed. In making the assessment the assessing officers included in one valuation the assessment of two lots 20 and 21 instead of stating in the record the value of each lot separately. There, the two lots were set down in the assessment roll at a total valuation and a gross tax was assessed. The record so remained during the period when the books were kept open for examination and correction and so they came into the collector's hands. Thereafter, separate statements of a valuation and of the assessed taxes were made upon the books in the collector's office. In holding that the tax was void the Court of Appeals said:

" We think that there was a fundamental defect in the proceedings for assessment and taxation. The charter of the city (Laws 1873,

chap. 863, title 10), prescribed the power and the duty of the assessors, and required that all assessments shall refer to the ward maps, which were to be made and to be kept by them.  They were directed to follow the provisions of the general law, and they required a separate statement of the value of the land to be assessed. * * * That all the proceedings prescribed by the law for the assessment of land for the purposes of taxation must be substantially, if not strictly, complied with, is a well-settled and a familiar rule. The purchaser takes at his peril the title offered to him, and depends upon the strict right of the public officier to sell.  That right rests upon a succession of steps, which must have been substantially taken to reach the result.  The failure in the present case to separately state the value for assessment of the premises in question amounted in law to a failure to impose any tax which the owner could be held for.  There was, in such respect, an absence of a specific requirement of the statute with respect to the annual record. That which the Legislature has directed courts cannot declare immaterial. [*Merritt* v. *Village of Portchester*, 71 N. Y. 309; *Stebbins* v. *Kay*, 123 id. 31.]

" During the period when, by law, property was to be valued for taxation purposes and a tax assessed, these steps were not taken as to the lot, which, on the ward map in the assessors' custody, and to which they were obliged by law to refer, in making up their rolls, appeared with its ward number, 21.  The defendant, upon finding upon the annual record no valuation of his lot, was under no obligation to make any application to the taxing officers.  It was not a case for correction; for there could be nothing to correct when there was no valuation for assessment."

In principle there is no difference between that case and the case at bar.  There, instead of making separate assessments, the assessors assessed both lots together.  Here, the assessments were correctly made, but instead of making separate apportionments and extensions the entire tax was set down against two specific parcels.

In *People* v. *Hagadorn* (*supra*) it appeared on the trial that the sale under which the comptroller assumed to execute the deed in question was based upon the non-payment and return of taxes on the land for the years 1866–1870, both inclusive.  It was shown that the board of supervisors for Fulton county had never computed, entered or extended upon 'the annual assessment rolls the aggregate amount of the town and county tax levied upon any of the lands in Stratford, Fulton county, for any of the years named. The board was required by statute to set down opposite the several valuations the sums to be paid as taxes thereon.  It fixed the rate of taxation and authorized the supervisor of the town to compute

and enter the amount of the tax in the roll. The supervisor, after the adjournment of the board, carried the roll home and computed the amount of the tax for the years in question upon the several pieces of land therein described and entered it in the roll and handed the roll and warrant to the collector for collection. The taxes were not paid and the premises were sold. The Court of Appeals held that the assessments were void and that the rolls and the warrants attached thereto were fatally defective and imposed no liability upon the persons taxed. In the opinion Chief Judge RUGER said:

" It is quite obvious from the chronological order in which the proceedings are directed to be taken, that the duty of computing and entering the amount of the tax upon the assessment roll is imperative. Legal validity could not be given to a warrant requiring the collector, to collect the sums entered in the last column of the assessment roll, when none are entered therein, nor could the board of supervisors inform the county treasurer of the aggregate amount of the tax to be collected, when it had not been ascertained.

" Each of these directions requires a completed assessment roll, and the united action of the board of supervisors while it is still in actual session, and capable of corporate and co-operative action. (*Bradley* v. *Ward*, 58 N. Y. 401.)

" The proper assessment of a tax requires not only the establishment of a ratio upon which the tax is to be based, but also the computation and entry in the roll of the amount of tax levied. Without this no tax has been levied and the board of supervisors has failed in the performance of the duty which the statute specifically enjoins upon it. Whatever clerical duty may properly be devolved upon third persons, it is clear that it can be such only as is to be performed in the presence of the board and under its supervision, and that the duty of passing upon the question of a corrected assessment roll and certifying to its accuracy and completeness as a perfected roll, is a judicial duty which cannot be delegated. (*Bellinger* v. *Gray*, 51 N. Y. 610.)

" We are, therefore, of the opinion that the rolls for the several years 1868, 1869 and 1870 in the town of Stratford and the warrants attached thereto were fatally defective, and imposed no liability upon the persons taxed.

" It is also equally clear that a return of the non-payment of taxes, so levied, conferred no authority upon the comptroller to sell the land thus taxed. (*Thompson* v. *Burhans*, 61 N. Y. 52; *Whitney* v. *Thomas*, 23 N. Y. 281.) "

In *People* v. *Inman* (*supra*), among the defects complained of was the failure to extend the tax. In holding that this was fatal,

Chief Judge CULLEN, who wrote the opinion, said: " That the facts found as to the action of the board of supervisors in levying the taxes of 1863, 1864 and 1865 also rendered the taxes for those years void seems to be equally well settled.  In *Bellinger* v. *Gray* (*supra*) it was held that where the board of supervisors attached their warrant to the assessment roll before its completion, by inserting and extending the tax, and then delivered it to the collector with directions to collect the tax, the assessment roll and warrant were void.  The same doctrine was held in *Davis* v. *Read* (65 N. Y. 566).  Both these cases were decided by the Commission of Appeals. In *People* v. *Hagadorn* (104 N. Y. 516) the facts were similar to those in the case before us.  There the board of supervisors fixed the ratio of tax upon the aggregate amount of valuation and without extending it, signed the roll and delivered it to the supervisor of the town with authority to complete and enter against the tax-payers the respective amounts of their tax.  The tax was held void.  Chief Judge RUGER, writing for the court, said: ' We are quite clear that this proceeding (the mode of action of the super-visors) constituted a fatal irregularity in the proceedings to levy the taxes in question.'  (p. 521.)  *People ex rel. Ostrander* v. *Chapin* (105 N. Y. 309) is to the same effect, and the cases of *Bellinger* v. *Gray* and *People* v. *Hagadorn* (*supra*) are cited as authority for the proposition."

In *People* v. *Ladew* (*supra*) the supervisors of Hamilton county failed to extend the tax, and in holding that this defect rendered the tax deed void, the Court of Appeals, speaking through Judge ANDREWS, said:

" The board of assessors of Hamilton county for these years did not ascertain or extend, nor did they by resolution levy the tax upon the assessment roll of the various towns.  They did not ascertain or extend the tax to be levied against the taxable inhabit-ants of the various towns.  They did not levy the tax for the county, including the State tax, upon the valuations as equalized by them.  Finally they did not attempt to set down in a separate column in the assessment roll of each tax district the sum to be paid as a tax on the real estate including the tax sales as fixed by the comptroller.  The tax roll for 1862 also contained no oath of the assessors.  As to these facts there was no dispute.  Because of other litigation the court and the counsel was familiar with them. The evidence was excluded as immaterial.  For present purposes we shall treat it as in the record.

" So treating it, the title of the owners was not divested by the sale or the subsequent deed.  The tax itself and the sale were absolutely void.  (*People* v. *Inman,* 197 N. Y. 200.)  Any pre-

sumption of regularity that may have existed is rebutted. All this the State concedes."

The record here discloses that no valid tax was levied and consequently no lien was ever created upon the land. In other States the law is the same and a failure to extend the tax is a jurisdictional defect. (*State* v. *Perkins,* 24 N. J. Law, 409; *Derry Nat. Bank* v. *Griffin,* 68 N. H. 183; *Seymour* v. *Peters,* 67 Mich. 415.)

The defects here were not cured by the tax deeds. Section 95 of the charter provides that such a deed " shall vest in the grantee an absolute estate for the term of years mentioned in his certificate, and which deed shall be conclusive evidence of the regularity of all prior proceedings." This language is, by its very terms, limited to curing irregularities and not jurisdictional defects. The language is that the deed shall be conclusive evidence of the " regularity " of all prior proceedings and the courts cannot, by any process of judicial legislation, enlarge the word " regularity " to include jurisdictional defects. (*Joslyn* v. *Rockwell,* 128 N. Y. 334; *Ensign* v. *Barse,* 107 id. 329.) Consequently it follows that there is left " open to the owner full right to assail the proceedings in any jurisdictional respect." (*Ensign* v. *Barse, supra.*) Even if the language of the charter assumed to cure jurisdictional defects, it would be unconstitutional. It does not purport to be a statute of limitations giving to the owner a reasonable time after the deed is recorded to maintain an action to assert and enforce his rights. (*Bryan* v. *McGurk,* 134 App. Div. 93; affd., 200 N. Y. 332; *Peterson* v. *Martino,* 210 id. 412; *Matter of City of New York* [*Grand Boulevard*], 212 id. 538.) The charter provision does not pretend to give to the landowner either notice of the conveyance or time within which to relieve himself from the conclusive effect thereof. A similar provision as to the conclusiveness of all prior proceedings found in section 132 of the Tax Law has been frequently construed by the courts. (*People* v. *Witherbee,* 199 App. Div. 272; *Ostrander* v. *Bell,* 234 N. Y. 566; *People* v. *Golding,* 55 Misc. 425.)

The Legislature cannot cure jurisdictional defects. The entire want of any assessment, such errors in the assessment as prevent the taxpayer from discovering upon what property he is taxed and the amount thereof, failure to give him notice and an opportunity to object, and generally any defects or omissions which strip the taxing officers of their jurisdiction or deprive their proceedings of the necessary character of " due process of law " are beyond the reach of the curative statute. (37 Cyc. 1068.) Tax proceedings by which an owner may be deprived of his property without his assent must be strictly pursued. (*Merritt* v. *Village of Portchester, supra; Thompson* v. *Burhans, supra.*)

It is perhaps true, as urged by defendant's counsel, that the plaintiffs' claim, in view of their conduct, does not make a very strong appeal to the conscience of the court. Be that as it may they are not seeking in this action to avail themselves of the ordinary equitable jurisdiction of the court; they are claiming substantial rights, under express statutory provisions, and it is not within the province of the court to disregard their plea.

It follows from this discussion that there was an utter failure to impose any tax against the lands involved and consequently the proceedings resulting in the sale thereof together with the deeds given are void, and the plaintiffs are entitled to judgment accordingly.