SHARP (STEVENS v.). See Case No. 13,410.
SHARP (UNITED STATES v.). See Cases Nos. 16,264 and 16,265.

## Case No. 12,711.

SHARPLEIGH et al. v. SURDAM et al.

[1 Flip. 472;[1] 11 West. Jur. 203.]

Circuit Court, W. D. Tennessee. Feb. 15, 1876.

TAX TITLES—EQUITY JURISDICTION—CLOUDS ON TITLE.

1. A court of equity has jurisdiction where the owner of real estate is in possession, and the holder of a tax title holds it as a cloud over the title, refusing to prosecute it.

2. Within the meaning of the act of congress of 1862 (12 Stat. 422), providing for the collection of direct taxes in insurrectionary districts within the United States, a city, township, or subordinate taxing district within which military authority shall have been established, constitutes a district for the purpose of taxation, although not a parish, district or county within the meaning of the law of the state, creating its civil and political divisions for other purposes.

3. The clause creating a penalty for non-payment of the tax is not unconstitutional as being a discriminating tax. Nor is it an ex post facto law, ample opportunity being afforded to pay subsequent to the assessment.

4. The judgment upon tax titles where courts have refused to administer the political policy plainly indicated by the law, inducing the necessity of legislative interference with the canons of construction set up by the courts reviewed and disapproved; and the rule announced that a tax law should be interpreted like any other enactment intended to enforce political duties.

5. The cases which have decided that enactments declaring tax deeds should be evidence of the "regularity of the sale," meant the proceedings attending only the motion itself, and did not include the preliminary steps to authorize it, said not to rest in sound principles of construction, but were too many in number and from courts of too high respectability and authority to be disregarded by a circuit judge of the United States.

6. Those which hold that clauses declaring that tax deeds shall vest in the purchaser a title in fee simple, where no exceptions are named in the statute, vest such title only where the

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

statute is substantially complied with, approved and distinguished from the case at bar.

7. A tax deed under the act of congress, for the collection of direct taxes within insurrectionary districts (12 Stat. 422), which provided that the deed should be evidence of the regularity and validity of the sale, should be defeated only by proof of non-subjection to taxation, payment of the tax, or that the land had been subsequently redeemed, and can be avoided in no other way. Irregularities will not affect the validity of the title, provided the proceedings are colorable and free from fraud, accident or mistake.

(Syllabus by the Court.)

In equity.

Smith & Hill and Smith & Stephens, for complainants.

Smith & Kittredge and D. K. McRae, for defendants.

EMMONS, Circuit Judge. In all the cases where the complainants are in possession, judgments already rendered in the federal courts fully sustain the jurisdiction. In Gilman v. Sheboygan, 2 Black [67 U. S.] 510; Slater v. Maxwell, 6 Wall. [73 U. S.] 268; Dows v. City of Chicago, 11 Wall. [78 U. S.] 108, and the New York, Virginia, and Illinois cases, cited and approved in them, the irregularity complained of did not appear on the face of the proceedings, but extrinsic evidence was necessary to show it. When the deed threatened or executed is made evidence by the statute, and the subject of the tax and suit is real estate, equity will interfere. The rule is more extensive, but the part applicable here alone is noticed. The New York, Virginia and Illinois cases approved by the supreme court, as explained and since applied in the courts which pronounced them, go quite beyond the necessities of those now before us where the defendants are out of possession. See Hanlon v. Supervisors of Westchester, 57 Barb. 383; Crooke v. Andrews, 40 N. Y. 547. Those where they have entered and retain possession under their titles demand a different remedy. The Orton v. Smith, 18 How. [59 U. S.] 263, announces the familiar rule that in order to authorize a court of equity to interfere in reference to an asserted right to real estate, the complainant must be in possession, unless there is ground of fraud, accident, mistake, discovery, multiplicity of suits, irreparable mischief, or other ground of equitable jurisdiction. In the numerous cases cited for the complainants, generalities may be found seemingly covering the cases where complainant is not in possession. But all must be referred to the circumstances in reference to which they are announced. Thus read, they require possession in all instances where there is not some other element of equitable cognizance. Still, in actual practice, the courts, desiring to afford relief, have seized on so many and so slight circumstances to take cases out of the old rule, that they will not enjoin a mere trespass where there is ample remedy at law. As the precedents now stand, there are few exceptions

in practice to the rule that a court will inquire into the validity of a tax sale which the defendant refuses to prosecute, and which he holds over the head of a complainant as a cloud upon his title. There is no necessity for this remedy where the owner is out of possession and may bring ejectment where there are no special circumstances of equitable relief. We approve of the rule in Blackwood v. Van Vleet, 11 Mich. 252, and similar cases.

The language in Slater v. Maxwell, 6 Wall. [73 U. S.] 268, is quite capable of an interpretation, that in all cases where extrinsic evidence is necessary to show the invalidity of proceedings, the owner may go into equity, and that it is only where proceedings are void on their face that the remedy is wholly at law. This is so at war with what we deem well settled principles in this department of the law, that we think no such meaning should be imputed to the court.

Substantially, it is indifferent upon which side of a court having jurisdiction of the subject and the parties, its decree is valid when collaterally questioned, and both being willing to accept its judgment, a party shall proceed. But the supreme court have not so treated it. As if it were a question of power and jurisdiction in a plenary sense, it will sua sponte dismiss proceedings in a court of last resort, if a majority of that tribunal deem the case one more fit for the law side than the equity side of the court. See Noonan v. Lee, 2 Black [67 U. S.] 509, and Hipp v. Babin, 19 How. [60 U. S.] 271, and other cases in that court. Looking to the vast number of irreconcilable and conflicting judgments in reference to jurisdiction at law and in equity in all its departments, such a rule ought to be corrected by legislation. We have no doubt of the jurisdiction in this case.

The sixth section of the act of 1862 (12 Stat. 423) directs the commissioners to enter upon their duties whenever the commanding general of the forces of the United States entering into any insurrectionary state or district shall have established the military authority "throughout any parish or district or county of the same."

It is insisted that the authority was not so established throughout the county in which the city of Memphis is situated, and that the occupation of the city alone is not sufficient to authorize the assessment and sale of this land for taxes. We do not go over the conflicting testimony in reference to the military situation, or deem it necessary to decide that the general orders of the commanding general will in all cases conclusively determine the establishment of military authority within the lines described in them. We can conceive of cases where such a rule would work unjust results. The word "district" is used in this section not necessarily to designate any civil division in the state occupied, but as synonymous with "region," "section of country," or "locality occupied." The same word

is used in describing the whole territory into which the commanding general enters, and the subjugation of parts of which will authorize the tax. Within the nomenclature of the law there is necessarily an insurrectionary district, the whole of which need not be occupied in order to justify the tax. The statute so provides in express terms. We know of no civil divisions in the insurrectionary states where there were districts within districts. But this law declares that where the commanding general enters into any state or district, and within it establishes the authority throughout any parish or county, the tax may be collected. Within this law the occupation of the entire city of Memphis, having a distinct municipal organization, is a taxing district. It is not a parish or a county; but both the title and the reason of the law show that distinct political divisions and tax districts are contemplated by it. This is the most familiar phrase in the nomenclature of the tax laws of the whole nation. Its common use and application has no reference to the statutory or constitutional names of civil divisions for other political purposes. "Taxing district" is a phrase long known in our elementary treatises, judicial discussions, and statutory enactments, to describe the territory or region into which, for the purpose of assessment merely, a state, county, town, or other political district, is divided; and without going further and saying what we think true, viz.: that a region of territory permanently subdued, although parts of several political divisions in a state might constitute a district under this law, we are quite clear that a whole city, municipality, town, or other civil division, for the purposes of government and taxation, may do so, although not in the statutes of the state before known by the name of "parish, district or county." The exigency in which the assessment became lawful, we have no doubt existed in this case. Wayne Co. v. City of Detroit, 17 Mich. 390; Attorney General v. Supervisors of St. Clair, 11 Mich. 63, and kindred cases, although not very applicable so far as the facts are concerned, are instances where the words of laws have been extended to include civil divisions known in the constitution and laws by other names.

The 1st section of the act (12 Stat. 422) provides that, when in any state rebellion shall prevent the collection of the tax, the land shall be charged with a penalty of fifty per cent. in addition to the assessment. The 3d section authorizes owners within sixty days after the assessment, to redeem on paying the tax. By section 7 they may redeem after sale by payment of the tax and a penalty of ten per cent. per annum interest.

The question raised by complainant's counsel is, can congress impose this penalty? If it can, that answers the objection that the tax is unequal and not in proportion to the census enumeration. It does not raise the question of ex post facto laws, because

there is liberty of paying the tax within sixty days after assessment. It is substantially, when read in connection with the interpretation put upon it, in Bennett v. Hunter, 9 Wall. [76 U. S.] 326, which authorizes any person interested to pay the tax, but a penalty is imposed for delinquency after the act is enacted. The law itself applies to all states and districts coming within the exigencies described—Vermont as well as Tennessee.

In Pullan v. Kinsinger [Case No. 11,463], we had occasion to consider a kindred subject in reference to the power of the general government to create special tribunals and exceptional modes of enforcing the performance of all political duties. We do not desire to go again over the cases, and have no doubt of the constitutionality of the penalty of 50 per cent. It is but a penalty and not a discriminating tax. The tax without any penalty may be paid after the assessment and the passage of the law. The statutes have been several times before the supreme court in circumstances calculated to provoke this objection if deemed tenable. See Bennett v. Hunter, 9 Wall. [76 U. S.] 326; Corbett v. Nutt, 10 Wall. [77 U. S.] 464; and other subsequent cases.

That the sale was irregular we have no doubt. There was no sufficient advertisement either in time or manner. If the statute did not make the certificate conclusive of these things, the title under it would be invalid. We think, however, it is subject to be defeated only by proof of the three facts mentioned in the provision of the 7th section, and that mere irregularities will not affect it.

We have no time to go over any considerable part of the extraordinary history of American adjudications in reference to tax titles. We shall briefly notice the leading cases cited by counsel, and a few others like them, to show that they are not precedents for the judgment asked here by complainant, and that there is nothing in their history in the least calculated to induce the court to adopt their spirit and rules of interpretation. We consider them briefly to show why their disregard of legislative intention, and their attempted administration of political policies in conflict with that plainly announced by successive laws, is not only not followed, but most pointedly rejected. The canons of interpretation which have construed statutes so as manifestly to defeat the will of the law maker belong to departments of learning where scholastic refinements and subtle definitions force conclusions, and sustain creeds, irrespective of reason and practical truth. They should have no place in efforts to ascertain what is the rule of civil conduct prescribed by the supreme power in the state.

In Allen v. Armstrong, 16 Iowa, 508, Dillon, J., says: "From a comparison of the law with adjudicated cases, it seems to have been drawn to outwit the courts, and to prevent them from resorting to those refined and astute constructions so frequent in cases of this kind," etc., etc. The remark was quite justified by the legislative and judicial contest in that state.

In Gwynne v. Neiswanger, 18 Ohio, 400, Judge Hitchcock says, the practice had prevailed for that state in that class of cases to sell lands for taxes, until in consequence of the astuteness of the courts in declaring tax sales void for the least error, it came to be understood that no bidder could be obtained, and for some years the practice was discontinued. This difficulty led to the stringent enactments we elsewhere notice, and which he said had never injured any one who duly paid his taxes. It provided the deed should be conclusive of all else save the nonpayment of the tax.

A kindred impolitic severity has resulted in several other states from this irrational and wholly unprincipled refusal on the part of judges to administer in good faith the clearly expressed will of the legislature.

Blackw. Tax Titles, p. 88, after a long review of the more extravagant and unjustifiable judicial interpretations of laws intended to give efficacy to proceedings to sell property for taxes, says: "Where statutes have broken in upon these rules of construction set up, the courts have discountenanced them, and given effect to the intent only as manifested by the words used, disregarding the spirit of the rule prescribed, by refusing in every instance to give an equitable construction to the statutes." This, he says, is commendable and sanctioned by reason and authority in analogous cases. What analogous cases in the common law authorize the judiciary to refuse to administer the true spirit of an enactment because an unusual reading of its language will enable it to set the law-making power at defiance, the author does not say. On page 71 he congratulates the profession that out of one thousand cases in court, not twenty have been sustained. It would be difficult to induce a philosopher or upright statesman to believe that this discreditable result was owing, in all cases, to the greater intelligence and higher character of the courts as contrasted with the makers and administrators of the laws. In modern times judges of great ability have frankly conceded that in a large degree it has sprung from an unwarranted encroachment of the judiciary upon powers vested solely in our legislatures. It is for them to say what shall be the political policy of the courts in reference to coercing the citizen to a performance of this public duty of paying his dues to the government and declaring the consequences of his neglect.

In Vance v. Schuyler, 1 Gilman, 160, the statute provided the deed should be evidence of the regularity and legality of the sale. Held, this included all preliminary proceedings. In this case is the singular conces-

sion that an enactment by the legislature of the familiar old common law rule of interpretation, "that no objection should have been deemed valid except such as were consistent with a liberal and fair interpretation of the intention of the legislature," was a repeal of the rules which the court had before then applied to such statutes. Several of the judgments made in disregard of this sound rule for reading laws were cited by counsel for complainants as precedents. They are not applicable to the case before us, but would by no means be followed if they were. It requires no act of congress in order to secure in this tribunal a liberal and fair interpretation of laws according to their intention. We understand that our oaths and the common law already compel this, and force us to reject as precedents all judgments which concede they do not enforce the legislative will. And, see, also, Messinger v. Germain, 1 Gilman, 631; and Rhinehart v. Schuyler, 2 Gilman, 473.

Beekman v. Bigham, 5 N. Y. 366, says, that, originally in New York the laws declaring that deeds should be evidence of the regularity of sales, were held to include the prerequisites, as well as the mere auction, but that since Striker v. Kelly, 2 Denio, 323, the rule had been changed by the courts; but the legislature again corrected the reading and restored the law. In Arkansas and Iowa are notable instances of this contest. They are, however, not exceptional. Such is the history everywhere. As often as the courts have by metaphysical refinements and scholastic readings defeated the statutory intention, an additionally stringent law has been enacted, until, in some instances, we have no doubt, sound constitutional limits have been exceeded. The present law, however, fairly construed, carries us to no such extreme in order to dispose, as we do, of the bills before us.

We have thus glanced at a few of the long list of similar cases to indicate that we do not disregard these canons of interpretation in ignorance of their existence and that we go to the construction of this tax law as we would to the reading of any other declaration of the legislative will. In so doing we shall not intentionally disregard well settled precedents, or render any judgment at all revolutionary. The ruling here involves no dissent from any judgment relied upon by the complainant. The general rule that an ex parte statutory power, where the property of the citizen is to be divested without notice or opportunity for hearing and contesting, unless the statute directing the proceeding otherwise provides, must be strictly complied with, is well settled law. In no tribunals is it more firmly established than in the national courts. Moore v. Brown, 11 How. [52 U. S.] 414; Games v. Stiles, 14 Pet. [39 U. S.] 322; Stead's Ex'rs v. Course, 4 Cranch [8 U. S.] 403; Williams v. Peyton's Lessee, 4 Wheat. [17 U. S.] 77; Roukendorf v. Taylor's Lessee, 4 Pet. [29 U. S.] 350, and numerous other cases fully so determine. The quite plain distinction between this conceded rule and the effect of a statute which repeals it in whole or in part, has been often overlooked in these discussions. If a statute declares that irregularities shall not defeat the title, or that certain certificates shall be prima facie or conclusive evidence that there are none, the old rule of strict and full compliance with the statute is no warrant for misconstruing or refusing fairly to carry out its purposes. The rule which undoubtedly exists without such provisions is one thing; the duty of the court to administer such enactments where they exist is quite another.

The cases cited which hold that statutes declaring tax deeds shall be prima facie or conclusive evidence of the regularity of sales, do not include the regularity of proceedings preceding them; but mean only that the auction itself was regular. That it was at the proper time, place, the land sold to highest bidder for cash, etc., etc., have, it will be seen, no application here. For many years in several states they were differently construed, and we might, we think, successfully criticise the principle upon which they rest; but they are too many in number and from courts of too high respectability to be disregarded. They have embodied this canon of interpretation in our American tax law. Statutes may now be presumed to have been framed in reference to it. At least such should at this day be the judicial presumption. The rule they establish, however we may disapprove many of the instances of its application, will in no way be violated in our judgment. Were that the question here we should follow Striker v. Kelly, 2 Denio, 323; Bunner v. Eastman, 50 Barb. 639, and many similar cases. They have been fully adopted in several judgments of the United States supreme court.

There is a class of cases, some of which were cited by complainant's counsel as decisive of this case. Jackson v. Morse, 18 Johns. 441; Varick v. Tallman, 2 Barb. 113, and others like them, construed a statute which declared the deed should vest in the purchaser a title in fee simple. There were no other exceptions in the law. If the clause was construed literally and broadly, payment of the tax, in the absence of all advertisement and assessment, would be unavailing. The deed would divest the citizen's estate where he had paid his tax and been guilty of no wrong. Of course no such monstrous result was intended by the law. In holding that the statute meant only to declare what estate the deed should vest in the purchaser when the law was complied with, was carrying out what, beyond doubt, the law-makers intended. It is a clause quite familiar in legislation, and has always necessarily received the same construction. In proceedings to condemn property, under the power of eminent domain, for court houses, public parks,

railroads, and other public and governmental objects, such clauses are always inserted. They declare that the proceedings shall vest an estate in fee for life, or for years according to the purposes of the law. But we know of no exception in their interpretation. They are held to be descriptions of the kind and duration of the estate to be created by the proceeding where it is pursued as required by the statute. That such an estate could be created without it has never been decided. Such precisely are all the cases construed in Jackson v. Morse, 18 Johns. 441, and its kindred judgments in reference to tax certificates and deeds. We have no doubt of their correctness, and should go quite beyond some of them in narrowing the effect of the proceedings.

The difference between such enactments and judgments and the law before us, and the ruling to be made, is most manifest. The provision is pointed directly to the effect of the certificate as evidence of compliance with the requirements of the statutes. By no possible interpretation or collaterally adduced intention can this be said to be descriptive of an estate only when all the statutory requirements are fulfilled. It expressly declares it shall be evidence that they are fulfilled, and that this evidence shall be impaired only by proof of three specified things. None of them are offered by the bill in this case.

Provisions like those in the law before us have always been administered as we construe this. In Gwynne v. Neiswanger, 18 Ohio, 400, the law declared the deed should not be invalidated unless it was shown the tax had been paid. The court had no doubt that when the legislature had expressly stated the sole grounds upon which the proceedings should be attacked, the court could hear no other, and the tax title, although there were irregularities, was sustained.

In Allen v. Armstrong, 16 Iowa, 508, a similar law provided that only three things should be shown to invalidate the proceedings. They were the same as those in the federal statute. The advertisement was defective. The court, by Dillon, J., now of the 8th circuit, held, no other evidence was admissible, and upheld the title. Henderson v. Staritt, 4 Sneed, 470; Tharp v. Hart, 2 Sneed, 569,—are illustrations of enforcing such stringent laws according to their true spirit. There are similar judgments in Arkansas, Iowa and other states. It is somewhat singular that such discussions arise at all, and they would not, but for the professional belief that the courts had some peculiar power of absolving the citizen from obedience to laws intended to enforce taxation. In Thomas v. Lawson, 21 How. [62 U. S.] 331, the supreme court had before it the statutes of Arkansas, and held the clause in reference to the effect of the deed did not render it conclusive, because when taken in connection with the provisions in reference to a subsequent proceeding in equity, it was clear such was not the intention, although the words would have borne such a construction. Had it stood alone, like that before us, it would have been conclusive. The latter proceeding the court held was so. And, see Parker v. Overman, 18 How. [59 U. S.] 137. The only case cited by counsel or which our own investigations have discovered, having any tendency to authorize the liberty we are asked to take with this law, is Garrett v. Wiggins, 1 Scam. 335, where, under a law substantially like this one, providing that the title should not be invalidated unless it was shown that the land was not subject to taxation, or the tax had been paid, or the land redeemed, it was held, nevertheless, that a defective advertisement rendered the sale void. That the general principle upon which the court went, and which authorized it to say there were some other necessarily implied conditions besides those mentioned in the statute was correct, we shall soon say. But from its application in that case to a defective advertisement we fully dissent. It was a practical repeal of the law and would let in any other irregularity the presence of which, irrespective of the statute, would have invalidated the sale. It reduced the provision from a conclusive to a prima facie effect. The legislature, as we have seen, soon legislated away so irrational and unwarrantable an interpretation. And this the same tribunal conceded, had been done, where a subsequent statute declared its laws should be "fairly administered according to their intention." This was a plenary concession by the court itself, that it had deliberately refused to administer the real meaning of a public statute. We can hardly follow as a precedent a judgment conceded by the court which pronounced it to have been in violation of old and statutory rules. A directly contrary ruling was made in Allen v. Armstrong, 16 Iowa, 508, where some suggestions are made in reference to the constitutionality of a law which went further than to raise the effect of mere irregularities. We should not doubt its constitutionality, so as there existed a lawful tax and delinquency.

But we should say where there was a complete defect in the proceedings no matter what it was, so as to make it impossible for the citizen no matter however much he desired to do so, to pay his tax, the statute as matter of construction would be held not to apply to such a case. In such instances it would be warring with and not enforcing the legislative will if it did not restrain the general words of the law to such conditions as we knew it alone contemplated. In order to effectuate the intention of the law, words may properly be read with most unusual meanings, or the application of their literal signification be restrained to facts which the court is forced to see were alone present to the minds of the law-makers. And although there are numerous instances where

courts of respectability have said in such instances they must administer the law irrespective of its consequences, we consider by far the greater number of the judgments erroneous in which such a rule has been administered. In the case before us, if there had been no sale whatever. if there had been no advertisement, if there had been no assessment, or other complete defect which wholly prohibited the citizen's paying his tax, we should readily and with full confidence rule that such cases were not within the spirit, although within the letter of the law, and be fully justified by numerous judgments, both English and American. The supreme court of the United States have repeatedly sanctioned Chancellor Kent's declaration. modified slightly from older authors, that what was within the letter, but not within the spirit of the law, was not within the law itself. The numerous instances of such constructions are too familiar to require citation. Even fraud, accident, or mistake are not enumerated in this proviso. Beyond doubt they are included by implication. They are not within its reason or intention. Neither are any of the extraordinary exigencies imagined at the bar by way of showing the hardship and improbability of the construction claimed by the complainant. The statute demands some proceedings before it can have any possible application. They must be colorable, embodying a fair and honest attempt to afford the delinquent citizen the opportunity the statute contemplates, to perform his public duty. There must always be a colorable proceeding in which irregularities may occur. Without this, the exigency in which the law is to have force does not occur. Thus treated (as every court intelligent upon this subject would treat it), it is but what in modern times is a wholly common-place enactment. It says, if the land is subject to taxation, if a tax was in fact assessed, so as to give the citizen an opportunity to pay it, and he neglects it, and a colorable attempt, free from all fraud and unfairness, has been made by public officers to sell his land and collect what he has been delinquent in paying, that mere irregularities shall not defeat the title. It requires much prejudice and hostility to efficient government to pronounce such a law tyrannical or impolitic. Looking at it in a proper spirit, free to read its enactments as intended to effectuate a necessary and protective public policy. it remains to consider whether the clauses in question authorize the rule contended for by complainants, or that argued by the defendants.

"Validity" has a well understood technical, as well as popular acceptation, and must receive such meaning in the courts if its use in the statute does not suggest a different one. In the general nomenclature of the law, no word is so frequently used to signify legal sufficiency in contradistinction to mere regularity as this one. We say a deed is regular but invalid for want of power in the attorney or officer. When a lawyer says he concedes the regularity of a sale, but objects to its validity, it is known the conditions are questioned upon which the power to make it depended. Elementary books, in treating of questions of both business and official agency, employ it as a compendious word, as always including every incident of complete legality. Regularity, on the other hand, never does so. An official sale, an order, judgment or decree may be regular. The whole practice in reference to its entry may be correct, but still invalid for reasons going behind the regularity of its forms. But, when we say a judgment, decree, or sale is valid, it fully excludes the idea that it is void for any reason.

Blackw. Tax Titles, 86, in criticising the opinion in Rhinehart v. Schuyler, 2 Gilman, 473, says the provision in the statute was, that the deed should be evidence of the regularity and legality of the sale, both of which are necessary to its validity. The word "validity," according to this writer, includes all the requisites of power to sell. This statute uses that very word, and by it includes alike the regularity of the sale and the preliminary acts upon which the power to make it rests. It is hardly germain to our present argument to say that the criticism itself was illy sustained by the facts of the judgment. The statute in Rhinehart v. Schuyler declared it should be evidence of the regularity and legality of the sale. The addition of this latter word is wholly overlooked by this writer, and he erroneously supposes the decision at war with those which had given a different meaning to provisions relating to regularity only.

On page 90, speaking of the recitals where they are evidence, he says, in order to make them full evidence without any proof aliunde, they must state all the prerequisites to constitute a "valid" sale. He is discussing the cases which made deeds evidence of the regularity of sales and uses this word "validity" to include all the particulars for a perfect title. There are numerous similar employments of the term in his treatise. His nomenclature agrees with all the judgments he cites. A valid sale means one having the quality of legal sufficiency and complete obligation. If less than this. it has no validity within any meaning we have ever seen imputed to that word.

During the few hours only we have been able to command for this investigation, we have noted from the discussions the following instances where the words "valid" and "validity" have been pointedly employed to denote a complete and indefeasible title or right as distinguished from merely regular proceedings subject to be invalidated by the proof of irregularities in the want of power. Carlisle v. Longworth. 5 Ohio. 368; Allen v. Armstrong, 16 Iowa, 513; Jackson v. Morse, 18 Johns. 441; Gwynne v. Neiswanger, 18

Ohio, 407; Henderson v. Staritt, 4 Sneed, 470; Tharp v. Hart, 2 Sneed, 569; Foster v. Smith, 10 Wend. 379. Nearly every other case before referred to in this opinion uses the word in the same way. In no instance do courts deem it necessary to employ any accompanying adjective when they desire to say, a deed, title, or proceeding, is in a plenary sense lawful and indefeasible.

Dictionary definitions seldom throw much light upon statutory meanings. Where the latter are obscure or doubtful, the reason and policy of the law as derived from all the fit sources of inquiry are far more enlightening. But where a legal and technical term is so well understood that the ordinary lexicons adopt it, such fact may well be referred to as an answer to the argument made at the bar that such professional and judicial meaning was not probably in the minds of the law-makers. Webster's Dictionary, after giving the popular meaning of "validity," thus gives its legal and technical signification, as used by the profession. "Law—legal strength or force, that quality of a thing which renders it supportable in law or equity, as the validity of a grant, the validity of a will, or the validity of a claim of title." That this legal signification had become so well known as to find its place in our ordinary dictionaries is not unworthy of consideration, when we are ascertaining in what sense the law-maker used it. It cannot be said they were unaware that it imported in its popular use, and in its legal application, substantial rectitude as distinguished from merely formal regularity. We must conclude that when it is enacted that the validity of a sale shall be attacked but in three ways, it is saying expressly you shall in no other way show it has not that quality which renders it supportable in law or competent to give title to what it purports to convey. It seems an unauthorized reading to declare that the statute in using the words "regularity" and "validity," two words of definite, well understood, technical meaning, long used to signify wholly different ideas, meant no more than if the word "regularity" alone was used. It requires us to expunge the word "validity" or say it has no meaning in the sentence. But the statute defines its own terms by the modes in which alone the certificate is to be defeated.

The things required by the law to invalidate the sale have no possible connection with its regularity—with its validity they have. The three subjects of proof, non-subjection to taxation, payment of tax and redemption of land after the sale, every one of them are wholly inapplicable to the mere auction. They constitute reasons going to its validity only as we have defined it.

The law provided a means to collect a tax from lands where the civil power of the nation had been overthrown by rebellion.

Looking to the great certainty of much disturbance in government, to only a partial restoration of forms under military rule, and anticipating great irregularity in the process of enforcement, it declared that the regularity and the validity of the sale, validity as including what is necessary to make the sale valid, should be defeated only by three substantial defenses. They are specified, and they, we think, include the entire scope of defense admissible. Even if the advertisement was imperfect, or the assessment inaccurate, so as the land was really subject to tax, and was, in fact, sold free from fraud, accident or mistake, such as would authorize equitable relief in other cases, we think the proceedings were intended to be conclusive, and so hold them.

NOTE. There were a number of similar cases, but this was the only one tried. The principles embodied in this decision were affirmed in the supreme court of the United States, in the case of De Treville v. Smalls, April term, 1879. That opinion has been followed in three later cases by the same court. See 98 U. S. 517, and 99 U. S. 441 and 496. Judge Emmons dictated the syllabus in this case as he did in Memphis v. Brown [Case No. 9,415]. The case was first published in the Western Jurist.