[Civ. No. 196.   Second Appellate District.—May 29, 1906.]

H. P. LANTZ, Administrator, etc., Respondent, v. J. E. FISHBURN et al., Appellants.

STREET IMPROVEMENTS—BOND ACT—CURE OF DEFECTIVE SPECIFICATIONS. Under section 4 of the street improvement bond act of 1892, mere defective specifications in the bonds are cured.

ID.—VALIDITY OF DEEDS—CONFORMITY TO LAW MUST APPEAR.—The validity of deeds acquired under the bond act—assuming the bonds to be valid—must depend upon the conformity or nonconformity of the proceedings of the treasurer with the provisions of law as prescribed in section 5 of that act, and in section 3765 et seq. of the Political Code therein referred to; and the burden is upon the party claiming under the deeds to prove affirmatively a strict compliance with the statutory provisions; and where such burden is not sustained, and it appears that the law was disregarded, the deeds are void.

ID.—VALIDITY OF BONDS—"CONCLUSIVE EVIDENCE OF REGULARITY"— LEGISLATIVE POWER.—Under a general finding to the effect that, after the usual precedent proceedings, the contract was awarded to

the contractor, and that thereafter, without any intervening pro-
ceedings, the bonds in question were issued, the provision in sec-
tion 4 of the bond act making the bonds ''conclusive evidence of
the regularity of the proceedings,'' cannot be construed as making
them conclusive evidence that all essential proceedings were actually
performed, nor would it be competent for the legislature to de-
clare it so.

ID.—GENERAL FINDING AGAINST EVIDENCE—NEW TRIAL.—Where it ap-
pears from the undisputed evidence embodied in the bill of excep-
tions that all of the essential proceedings were actually performed,
it would seem that the general finding to the contrary was the re-
sult of inadvertence.     However this may be, the finding being
clearly against the evidence, a new trial must be had.

ID.—APPLICATION OF ''CONCLUSIVE EVIDENCE''—UNCERTAINTY IN FIND-
INGS.—Whatever may be the effect of the provision in section 4
of the bond act making the bonds ''conclusive evidence of the reg-
ularity'' of the proceedings, it applies only to the proceedings
previous to the making of the certified list from the street super-
intendent of all assessments unpaid, upon the receipt of which
only the treasurer can issue the bonds.  Any uncertainty as to the
intention of the court to find whether this list was made or not, or
whether the requisite notice to prevent the issuance of the bonds
was or was not given, or as to other essential points, should be
remedied upon another trial.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a motion for a
new trial.  N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

J. L. Murphey, for Appellants.

Charles Lantz, for Respondent.

SMITH, J.—This is a suit to quiet title, resulting in a
judgment for the plaintiff.  The defendants appeal from
the judgment, and from an order denying a motion for a new
trial.

The complaint is in the usual form, alleging title in plain-
tiff's testator, George Locke, at the time of his death, and
subsequent title in his estate.  The original title of plaintiff's
testator is admitted.  But defendants in their answer allege
title in the defendant Rheinschild, deraigning title (in the

second defense set up in the answer) under sales of the two lots in controversy by the city treasurer upon default in payment of the first installment due on bonds issued upon a street assessment for the improvement of Bridge street, in the city of Los Angeles, and deeds thereon issued. They also set up, in a third defense, as a claim against the land, a bond issued upon a street assessment of the same lots for the improvement of the crossing of Echandia street with Bridge street; and, in a fourth defense, an alleged estoppel *in pais* is pleaded.

It appears from the findings that the specifications of the work under both assessments were the same as those involved in *Stansbury* v. *White,* 121 Cal. 433, [53 Pac. 940] ; *Chase* v. *Treasurer,* 122 Cal. 540, [55 Pac. 414], and *Chase* v. *Scheerer,* 136 Cal. 248, [68 Pac. 768] ; in which cases the assessments— and in the last two cases the bonds thereon issued—were on that account held to be void. Accordingly, in the briefs originally filed, it was assumed by the attorneys of both parties, on the authority of those decisions, that the assessments and bonds herein involved were void, and the argument was confined exclusively to the plea of estoppel. On this issue the findings of the court are adverse to the appellants, and are, we think, justified by the evidence; nor do we think the facts alleged, or those shown by the evidence, sufficient to constitute an estoppel. But in an amended brief filed by the appellants our attention has been called to the decision in the late case of *Chase* v. *Trout,* 146 Cal. 350, [80 Pac. 81], which, it is claimed, conclusively establishes the validity of the bonds here involved. In that case the specifications involved were substantially similar to those involved in the cases cited, and it was held that by effect of the curative provision of section 4 of the ''Act to provide a system of street improvement bonds,'' etc. (Stats. 1893, p. 36, sec. 4, last sentence), the bonds there in question were valid; and this decision must be taken as the final expression of the supreme court upon the points there involved, and upon the same points where involved in the present case. It must be assumed, therefore, that the validity of the bonds in this case was not affected by the defects in the specifications, as supposed by the counsel on both sides. But it still remains for us to inquire whether there were other defects in the proceedings of

a nature to affect the validity of the bonds, or the validity
of the deeds issued on the Bridge street assessment.

On the latter point it is clear that the terms of the curative
provision in question have no application and that—assuming
the bonds to be valid—the validity of the deeds must depend
upon the conformity or nonconformity of the proceedings of
the treasurer with the provisions of the law as prescribed in
section 5 of the act cited (Stats. 1893, p. 36), and in section
3765 et seq. of the Political Code, therein referred to; and
on this point it is to be regarded as settled law that, to give
validity to the deed, it devolved upon the defendants to prove
affirmatively a strict compliance with the statutory provisions.
(*Shipman* v. *Forbes,* 97 Cal. 574, [32 Pac. 599]; *Gwynn* v.
*Dierssen,* 101 Cal. 565, [36 Pac. 103]; *Merced Co.* v. *Helm,*
102 Cal. 159, [36 Pac. 399]; *Miller* v. *Williams,* 135 Cal. 183,
[67 Pac. 788].) This, with regard to several of the proceed-
ings necessary to give validity to the sale, the appellants
failed to do; and as to some it affirmatively appears that the
law was disregarded. Thus, the place of sale given in the
notice of sale was "at the easterly door of the county court-
house in Los Angeles county." But it does not appear that
this was "the front of the courthouse," or that any resolu-
tion of the board of supervisors had been passed prescribing
"the front door of the courthouse" as the place of sale, as
required by the provisions of section 3768 of the Political
Code then in force. Again, from the finding of the court it
appears, with regard to one of the lots, that the notice of
redemption required by section 3785 of the Political Code—as
it stood prior to the amendment of 1895—did not conform to
the requirements of the law; nor, in the case of either lot,
was a duplicate of the notice filed in the office of the county
recorder, as required by the provision cited as amended in
1891. (Stats. 1891, p. 134; *Kirk* v. *Rhoads,* 46 Cal. 403; *Ram-
ish* v. *Hartwell,* 126 Cal. 446, 447, [58 Pac. 920].) Again, by
section 3776 of the code, it is required that the certificate of
sale must state "the time when the purchaser shall be entitled
to a deed." But the recital upon this point in each of the
certificates states the time to be "on the twenty-first day of
June, 1901, upon giving notice of application therefor";
though by the provisions of section 3785 it is expressly pro-
vided that "the owner of the property shall have the right of

redemption indefinitely until such notice (i. e., the notice prescribed) shall have been given and said deed applied for.'' The term of redemption should, therefore, have been described as the concurrent happening of this event, and of the expiration of the year. The law requires, not merely that the fact of notice of redemption shall appear, but also that a recital of the fact shall be contained in the certificate; and upon the failure of either of these requirements, the certificate, and the deed thereon issued, are void. (Cases cited in *Baird* v. *Monroe,* 2 Cal. App. Dec. 365.) We are of the opinion, therefore, that the sales under which the defendants claim title were void, and that the finding that the plaintiff is the owner in fee simple of the land cannot be disturbed.

But it is found, also, and adjudged that the bonds themselves set up in the defendants' answer are void; and it remains to consider how far these findings and the corresponding judgment can be sustained; and in this regard the case is as follows: The proceedings for the assessment of Bridge street and the issue of bonds thereon are set forth in detail in the second defense of the answer; and this is the case also with regard to the proceedings for the assessment of Echandia street and the bonds thereon issued, which are set forth *seriatim* in the third defense. Upon the issues thus raised the court finds that all the allegations of the answer as to the proceedings, from the passage of the ordinance of intention down to and including the ordinance of intention to issue serial bonds, and the failure of the owners of three-fourths of the frontage to elect to take the work, are true; and it is also found that the bonds were issued as alleged, but ''are wholly void,'' etc. All the other allegations and denials contained in defendants' answer are found not to be true; and it is thus in effect found that none of the proceedings required by law in the improvement of a street, and the assessment of property therefor, from the making of the contract to the return of the warrant, inclusive—including the actual performance of the work—were in fact taken. All that appears from the findings, therefore, is: That after the usual precedent proceedings, the contract for doing the work was awarded to the defendant Rheinschild; and that, thereupon, without any intervening proceedings or acts on his part, or on that of the council, the bonds in question were issued to

him. The question is thus obviously suggested, whether, under the decision in *Chase* v. *Trout*, the bonds themselves are to be regarded as conclusive evidence, not only "of the *regularity*," but also of the actual performance "of all the proceedings" required by the street work act subsequent to the ordinance of intention. To this question there would seem to be but one answer. If there was in fact no contract, no work done, and no assessment, warrant or demand of payment, there was no tax due or lien therefor, for which bonds could be issued; and for the legislature to declare that the issue of a paper in the form of a bond should be conclusive evidence that these essential proceedings had been taken would seem to be beyond its competency; nor do we find anything in the decision in *Chase* v. *Trout* inconsistent with such a conclusion. But however this may be, it appears from the evidence in the bill of exceptions—which was received without objection and not contradicted—that there was in the case of each improvement a contract, an actual performance of the work, an assessment, with warrant, etc., and demand of payment, and return, and other matters negatived by the general finding of the court; and, indeed, there seems to have been no dispute as to the existence of these facts. We are, therefore, almost forced to the conclusion that the general finding of the court, that all allegations of the complaint, other than those expressly found to be true, were untrue, was the result of inadvertency; and that it did not intend so to find; and, however this may be, the finding is clearly unsupported by the evidence.

It follows that a new trial must be had, but with regard to the further proceedings in the case, there are other points to be adverted to. Whatever may be the effect of the provision of section 4 of the bond act, making the bonds referred to "conclusive evidence of the regularity of . . . proceedings," it applies only to the proceedings "previous to the making of the certified list of all assessments unpaid, etc., and of the validity of said lien up to the date of said list." But it is only upon the receipt of this certified list from the street superintendent that the treasurer can issue the bonds; and we cannot make out from the finding of the court whether it is intended to find that the list was not made as alleged, or the contrary. It is also provided in section 4

of the act, that if notice from the owner of the land, accompanied with the affidavit and certificate prescribed, be given to the treasurer, that "he desires no bond to be issued," then "no such bond shall be issued"; and it is alleged in the answer, with regard to each of the assessments, that such notice was not given. On this point the general findings of the court may be construed as negativing this allegation, but there is no specific finding, and we are not satisfied that the court intended so to find. Upon another trial the findings should be made more definite on these and other points.

The judgment and order appealed from are reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

Gray, P. J., and Allen, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 26, 1906, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 23, 1906.