[Civ. No. 12309. Third Dist. May 4, 1970.]

CITY OF PLYMOUTH, Petitioner, v.
THE SUPERIOR COURT OF AMADOR COUNTY, Respondent;
MELVIN R. EMERSON et al., Real Parties in Interest.

## COUNSEL

Wilson, Jones, Morton & Lynch and Robert G. Auwbrey for Petitioner.

No appearance for Respondent.

Brown, Dick & Reece and David H. Rule for Real Parties in Interest.

## OPINION

**JANES, J.**—The City of Plymouth (hereinàfter "petitioner") seeks a peremptory writ prohibiting respondent superior court from proceeding further with an action brought against petitioner by real parties in interest, who are property owners. Their suit against petitioner alleges that their property, which has been assessed to pay for municipal improvement bonds, will receive no benefit from said improvements.

After commencement of the property owners' action and service of process upon petitioner, petitioner nevertheless issued and sold the bonds. This application for a writ of prohibition presents the question whether the superior court has jurisdiction to proceed with the property owners' suit after petitioner has issued and sold the bonds. We have concluded, in the circumstances shown, that such jurisdiction exists.

The facts alleged in the petition for prohibition are uncontroverted. Petitioner is a municipal corporation. In July 1968, petitioner's city council adopted a resolution determining to construct sewer improvements, to issue bonds to finance that project under the Improvement Bond Act of 1915 (Sts. & Hy. Code, § 8500 et seq.), and to undertake assessment proceedings under the Municipal Improvement Act of 1913 (Sts. & Hy. Code, § 10000 et seq.). (See § 10600.)[1] On October 30, 1968, the city council adopted a resolution overruling protests, confirming the assessments, and ordering the work.

On November 27, 1968, the property owners timely[2] filed in respondent court a complaint alleging that their lands located in the city had been placed within the new assessment district[3] and had been assessed, but that such assessment was "arbitrary, fraudulent and confiscatory" and "without due process" in that their lands would receive "no benefit whatever" from the improvements. The complaint also alleged that the property owners had duly protested the assessments to the city council on such grounds, that the council had confirmed and levied the assessments, that the assessments were void, and that petitioner, "unless restrained" by the court, would sell the bonds.[4] The prayer of the complaint sought a declaratory judgment invalidating the assessments as well as an injunction restraining collection or enforcement of the assessments and restraining the city treasurer "from selling or delivering any bonds based upon said void assessments."

On the same day the action was filed—November 27, 1968—petitioner was served with summons and a copy of the property owners' complaint

[1]Section 10600 states that "[t]he legislative body conducting the proceedings under the provisions of this division [the 1913 act] may, in its resolution of intention, determine and declare that bonds shall be issued under the provisions of either the Improvement Act of 1911 or the Improvement Bond Act of 1915. . . ."

[2]See, Streets and Highways Code sections 10312, 10400.

[3]The complaint, including its attachments (which we brought up from respondent court on our own motion), avers in effect that the real parties in interest collectively own fewer than all parcels in the assessment district.

[4]The complaint further alleged that the formula used to assess the plaintiffs' land was improper, that the benefits were disproportionate to the assessments, and that other parcels to be served by the improvements had not been assessed their fair share or at all.

attacking the determinations made by petitioner's city council in the assessment proceedings. On December 17, 1968, however, petitioner awarded the sale of the assessment bonds to an agency of the federal government. Payment by that agency and delivery of the bonds to it were effected the next day. The property owners at no time attempted to temporarily restrain or preliminarily enjoin the sale and delivery of the bonds, nor did they post any form of security to protect petitioner if the bond sale was postponed or delayed during the pendency of the action.

After sale and delivery of the bonds, petitioner, in February 1969, filed a motion to dismiss the superior court action on the ground that further proceedings were moot and barred by the operation of sections 8625 and 8655[5] of the Streets and Highways Code. Relevant documentary exhibits were presented in support of the motion.

Section 8625, which is in the 1915 act, provides: "If bonds can not be issued upon the security of any particular unpaid assessments because of a *restraining order, injunction or other cause* not applicable to other unpaid assessments, the issuance of bonds upon the security of the assessments not affected by such *restraining order, injunction or other cause,* shall not be delayed, and such bonds may be issued in advance of the issuance of the bonds so affected." (Italics ours.) █ As we have pointed out, no restraining order or preliminary injunction was sought by the property owners in this case. Petitioner cites section 8625 as a legislative declaration that "the issuing entity should not delay the issuance of bonds which are not subject to legal restraints," and that, because of section 8625, "a plaintiff could not expect an issuing entity to voluntarily forego a bond sale pending suit." Petitioner cites no statutory or decisional authority, however, which *requires* that a temporary restraining order or preliminary injunction be sought by a property owner who seeks to permanently enjoin his assessment; and our own research has disclosed no such requirement. "When the words of the statute [here, section 8625] are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Estate of Simmons* (1966) 64 Cal.2d 217, 221 [49 Cal.Rptr. 369, 411 P.2d 97].)

The superior court denied the motion to dismiss by a written order which stated its opinion that "the factual and legal issues presented by the complaint . . . and motions . . . should not be resolved at the pleading stage but should be determined after answer and trial." Petitioner then filed its petition for prohibition in this court. We issued an order to show cause and temporarily stayed further proceedings in the trial court. The parties have not informed us of the status of construction of the sewer improvements.

---

[5]Quoted in text, *infra.*

Streets and Highways Code section 8655, which is part of the Improvement Bond Act of 1915, provides: "The bonds, by their issuance, shall be *conclusive evidence of the regularity of all proceedings* had prior thereto under this division [the 1915 act] and under the law pursuant to which the work was done [here, the Municipal Improvement Act of 1913]." (Italics ours.) The 1913 act declares that, where bonds are to be issued under the 1915 act, all of the "curative clauses" and "powers of reassessment" of the latter are applicable. (Sts. & Hy. Code, § 10609.)

The sole ground urged in petitioner's motion to dismiss was that further proceedings in the action were "moot and barred by the operation of sections 8625 and 8655 of the Streets and Highways Code. . . ." Petitioner contends that the court's order denying the motion to dismiss and requiring petitioner to proceed to answer and trial "was in excess of the court's jurisdiction."[6]

Petitioner's written argument states its theory as follows: "The issuance of the aforesaid bonds by force of S&H 8655 constituted conclusive evidence of the regularity of the prior assessment proceedings, and upon establishing their issuance as aforesaid, the court had no jurisdiction except to dismiss [the] action. . . . A trial of the case and the taking of evidence as regards the irregularities, if any, of said proceedings will be a useless act in that evidence can *not* be received at said trial for the purpose of rebutting the aforesaid conclusive evidence of their regularity." (Original italics.)

It is questionable whether petitioner's assertion in the trial court that the action was "moot and barred" directly raised the issue of *jurisdiction,* and there is nothing else before us to show that the question was presented to the trial court as a jurisdictional issue. ■ Petitioner has cited no authority which holds that a court acts without or in excess of jurisdiction when it proceeds to the trial of a moot case, nor have we discovered any such authority. (See, 1 Witkin, Cal. Procedure (1954) Actions, § 13, pp. 501-503, & 1967 Supp.; *Id.,* Jurisdiction, § 5, p. 278, and § 115, p. 378 et seq.)

■ Prohibition will issue, however, in a case where there is jurisdiction over the subject matter and the parties in the fundamental sense, but the court "has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief. . . ." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) The writ will issue, for example, "to restrain any court action other than

---

[6]"The writ of prohibition arrests the proceedings of any tribunal, . . . exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of such tribunal. . . ." (Code Civ. Proc., § 1102.)

dismissal where it is mandatory that the court dismiss [for lack of jurisdiction]." (*River Farms, Inc.* v. *Superior Court* (1967) 252 Cal.App.2d 604, 609 [60 Cal.Rptr. 655].)

 We have noted that under section 8655 of the Streets and Highways Code the issuance of the bonds for petitioner's sewer assessment district constituted "conclusive evidence of the regularity of all proceedings had prior thereto" under the Municipal Improvement Act of 1913 as well as under the Improvement Bond Act of 1915. Petitioner contends that this statutory provision bars the property owners from proving at trial, if they can, their allegations that as applied to their lands the sewer assessment is "arbitrary, fraudulent and confiscatory" and "without due process" in that such lands will receive "no benefit whatever" from the sewer improvement. We disagree.

Petitioner's misconstruction of the meaning of the pivotal language of section 8655 is based upon its erroneous interpretations of *Chase* v. *Trout* (1905) 146 Cal. 350 [80 P. 81], *Noyes* v. *Chambers & DeGolyer* (1927) 202 Cal. 542 [261 P. 1006], and *Crangle* v. *City Council of Crescent City* (1933) 219 Cal. 239 [26 P.2d 24]. Although no dispositive construction of section 8655 appears in any California precedent, guidance is found in the principle recognized in *Hoffman* v. *City of Red Bluff* (1965) 63 Cal.2d 584, 591-592 [47 Cal.Rptr. 553, 407 P.2d 857]: "Under the holding in *Chase* v. *Trout* (1905) 146 Cal. 350 [80 P. 81], reiterated in many subsequent cases [citations], a curative statute may validate all defects in proceedings *except* those which have resulted in violation of constitutional rights." (Italics ours.)

In *Chase* v. *Trout, supra,* the court had before it section 4 of the Street Bond Act of 1893, which declared that " '[s]aid bonds, by their issuance, shall be conclusive evidence of the regularity of all proceedings . . . previous to the making of the certified list of all assessments unpaid. . . .' " (146 Cal. at p. 356.) Recognizing that this curative statute could not validate noncompliance with due process,[7] *and speaking only of the "part of*

---

[7]"A curative statute or clause may preclude all investigation except 'the single inquiry whether, in the case presented, the effect of applying the statute is to deprive the party of his property without due process of law.' (Judson on Taxation, § 337.) . . . The correct proposition is, that as the legislature has power to devise any scheme for the assessment and levy of taxes for local improvements, provided such scheme includes such notice and opportunity for hearing to the owner of property taxed as will be sufficient to constitute the due process of law required by the constitution, and otherwise complies with constitutional limitations and restrictions, so the legislature, by a curative clause in the law establishing the scheme, may provide that the issuance of a bond, or the execution of a deed, in the enforcement of such levy or assessment, shall be conclusive evidence of the regularity of the performance of all the required steps in the proceeding, excepting those that are necessary to con-

*the proceeding" which occurred "before the assessment is issued,"* the court held that due process was satisfied by notice to the property owners and an opportunity to be heard in protest. (*Id.,* pp. 361-362.) (Italics ours.)

*Chase* did not address itself to questions of fraud, manifest abuse of discretion, or the absence of benefits to an assessed owner. In *Spring Street Co.* v. *City of Los Angeles* (1915) 170 Cal. 24 [148 P. 217], where "no effort at all was made by the council to assess in proportion to benefits" (*id.,* p. 31), the court emphasized that "the action of the council in the particulars to which this assessment is here subjected to attack, *is not conclusive, under the principle declared in Chase* v. *Trout,* 146 Cal. 350. . . ." (*id.,* p. 32). (Italics ours.)

In *Noyes* v. *Chambers & DeGolyer, supra,* 202 Cal. 542, where the property owners argued that sewer work performed in each section of a two-section assessment district "was peculiar thereto and without benefit to the other [section]" (*id.,* p. 544), the court reiterated the *Chase* exposition of due process in terms of notice and an opportunity to be heard (*id.,* p. 545). But, unlike the property owners in the case at bench, the property owners in *Noyes* had failed to protest to the city council. Thus, an absence of benefit or a manifest abuse of discretion did not appear on the face of the council's proceedings, and the *Noyes* opinion reflects no allegation of fraud.

In *Crangle* v. *City Council of Crescent City, supra,* 219 Cal. 239, an owner of real property instituted suit to cancel a resolution of the city council awarding a construction contract under the Improvement Act of 1925 (Stats. 1925, p. 849, as amended). After the suit was filed the work under the contract was completed and accepted by the city council, and the contractor was fully paid by the issuance of bonds of the city in accordance with the terms of the Improvement Act. No injunctive relief had been sought to restrain the city or the contractor from proceeding with the work, and at the time of appeal the bonds had been sold and were in the hands of an innocent purchaser. The Supreme Court dismissed as moot an appeal by the property owner from a judgment rendered on the pleadings. While it is not clear from the reported decision on what theory the property owner brought the action, it is made plain by the court's opinion that the plaintiff was not questioning the effect upon him of the curative statute there applicable. Moreover, the statute in *Crangle* did not speak merely of "the regularity of all proceedings," as does section 8655. Instead, it provided that the

stitute the due process of law, or to comply with any constitutional prerequisite." (*Chase* v. *Trout, supra,* 146 Cal. at p. 359; accord, *Crommelin* v. *Finn* (Sup.Ct. 1927) 129 Misc. 252, 262 [221 N.Y.S. 254, 264-265], (1928) affd. 223 App.Div. 868 [228 N.Y.S. 775].)

issuance of bonds would be "conclusive evidence of the regularity, *validity and legal sufficiency* of all proceedings, *acts and determinations*" and that such issuance barred "any action or proceeding . . . to prevent . . . the levy or collection . . . of a tax for . . . payment [of the bonds]." (Italics ours.) This difference in language is significant.[8] The overriding distinction, however, is that *Crangle* says nothing about lack of benefits or any other due process ground.

Other cases cited by petitioner are distinguishable in that, with one exception, none of them coupled an allegation of "no benefit" *with other allegations* of fraud or manifest abuse of discretion on the part of the assessing entity, or with allegations that the evidence presented to the entity plainly showed no reasonable expectation of benefit. And, with one exception, those cases involved a failure of the assessed property owners to protest to the assessing entity before seeking judicial relief—an omission not present here. The single exception noted is *Milheim* v. *Moffat Tunnel Improv. Dist.* (1923) 262 U.S. 710 [67 L.Ed. 1194, 43 S.Ct. 694]. *Milheim* furnishes petitioner no support. There, even though no protest had been made to the assessing entity (*id.,* p. 715 [67 L.Ed. at p. 1198]), the trial court took evidence *dehors* the entity's record on the issue whether the entity's finding of benefits was arbitrary. The Supreme Court upheld the trial court's finding. (*Id.,* pp. 721-723 [67 L.Ed. at pp. 1201-1202].) See, *Maxwell* v. *City of Santa Rosa* (1959) 53 Cal.2d 274, 277 [1 Cal.Rptr. 334, 347 P.2d 678].

Our construction of the "conclusive evidence" provision of section 8655 is consistent with the many cases which state that the determination of the city council on the question of benefits is not conclusive where the evidence before it plainly shows that no benefits could reasonably be expected to accrue to the property in question, where the council's determination is infected by fraud, or where on the face of the council's proceedings there appears such an abuse of discretion as is equivalent to fraud. (See, e.g.,

---

[8] "'Validity' has a well understood technical, as well as popular acceptation, and must receive such meaning in the courts if its use in the statute does not suggest a different one. In the general nomenclature of the law, no word is so frequently used to signify legal sufficiency in contradistinction to mere *regularity* as this one. We say a deed is regular but invalid for want of power in the attorney or officer. When a lawyer says he concedes the regularity of a sale, but objects to its validity, it is known the conditions are questioned upon which the power to make it depended. Elementary books, in treating of questions of both business and official agency, employ it as a compendious word, as always including every incident of complete legality. *Regularity, on the other hand, never does so.* An official sale, an order, judgment or decree may be regular. *The whole practice in reference to its entry may be correct, but still invalid for reasons going behind the regularity of its forms.* But, when we say a judgment, decree, or sale is valid it fully excludes the idea that it is void for any reason." (*Sharpleigh* v. *Surdam* (W.D. Tenn. 1876) 21 F.Cas. 1173, 1178 (No. 12,711) (italics ours); cf., *Lantz* v. *Fishburn* (1906) 3 Cal.App. 662, 667 [91 P. 816].)

*Maxwell* v. *City of Santa Rosa, supra,* 53 Cal.2d 274; *Irish* v. *Hahn* (1929) 208 Cal. 339, 346-347 [281 P. 385]; *Duncan* v. *Ramish* (1904) 142 Cal. 686, 692 [76 P. 661]; *Jeffery* v. *City of Salinas* (1965) 232 Cal.App.2d 29, 35 [42 Cal.Rptr. 486]; *Dumas* v. *City of Sunnyvale* (1965) 231 Cal.App.2d 796 [42 Cal.Rptr. 302]; *Tudor* v. *City of Rialto* (1958) 164 Cal.App.2d 807, 813 [331 P.2d 122]; *Jenner* v. *City Council of Covina* (1958) 164 Cal.App.2d 490, 497 [331 P.2d 176]; *Howard Park Co.* v. *City of Los Angeles* (1953) 119 Cal.App.2d 515, 521-522 [259 P.2d 977]; *Hanson* v. *Board of Trustees* (1925) 74 Cal.App. 585, 590 [241 P. 572].)

■ Special assessment without benefits is a denial of due process. (*Kansas City Southern R. Co.* v. *Road Improvement Dist. No. 3* (1924) 266 U.S. 379, 386 [69 L.Ed. 335, 341, 45 S.Ct. 136]; *Municipal Improv. Co.* v. *Thompson* (1927) 201 Cal. 629, 638 [258 P. 955]; *Miller & Lux Inc.* v. *Sacramento & San Joaquin Drainage District* (1920) 182 Cal. 252, 265 [187 P. 1041]; *Spring Street Co.* v. *City of Los Angeles, supra,* 170 Cal. at pp. 30-32; *Howard Park Co.* v. *City of Los Angeles, supra,* 119 Cal.App.2d at pp. 521-522; *Hutchinson Co.* v. *Coughlin* (1919) 42 Cal.App. 664, 669 [184 P. 435].)[9] ■ In the context of curative statutes such as section 8655, a taking of property without due process is considered a jurisdictional defect. (*Hannon* v. *Madden* (1931) 214 Cal. 251, 256 [5 P.2d 4]; *Southlands Co.* v. *City of San Diego* (1931) 211 Cal. 646, 656 [297 P. 521].)

■ As we have emphasized, the property owners' complaint alleges, inter alia, several factual reasons why their land "will receive no benefit whatever from said assessment. . . ." (e.g., topographical impediments, and use solely for agricultural purposes). Based on these recitals, they fur-

[9]The Municipal Improvement Act of 1913 requires that the special assessment for a proposed improvement be levied upon the respective subdivisions of land within the assessment district in proportion to the estimated benefits to be received by such subdivisions. (See, Sts. & Hy. Code, §§ 10008, 10204, 10312.) "Special assessments are imposed to defray the expenses in whole or in part of local improvements made by a municipality, on the theory that the owner of the property will receive *special benefits* from the improvement in excess of the benefits accruing to the general public." (*City of Los Angeles* v. *Howard* (1937) 23 Cal.App.2d 624, 628 [73 P.2d 1234] (italics ours); accord, *Santa Clara Valley Land Co.* v. *Meehan* (1923) 62 Cal.App. 531, 534 [217 P. 787].) "Indeed, . . . a special assessment is not, in the constitutional sense, a tax at all." (*Spring Street Co.* v. *City of Los Angeles, supra,* 170 Cal. at p. 29.) In contrast, where a general ad valorem tax is imposed upon property within a special taxing district, it is not necessary that any special benefit accrue to such property by reason of its inclusion, other than the advantage conferred upon all lands within the district. (See, *Carmichael* v. *Southern Coal & Coke Co.* (1937) 301 U.S. 495, 521-523 & fn. 15 [81 L.Ed. 1245, 1260-1261, 57 S.Ct. 868, 109 A.L.R. 1327]; *People* v. *City of Palm Springs* (1958) 51 Cal.2d 38, 47-48 [331 P.2d 4]; *American Co.* v. *City of Lakeport* (1934) 220 Cal. 548, 560-562 [32 P.2d 622]; *Palo Verde Irr. Dist.* v. *Seeley* (1926) 198 Cal. 477, 485 [245 P. 1092]; *Anaheim Sugar Co.* v. *County of Orange* (1919) 181 Cal. 212, 216 [183 P. 809].)

ther allege that the assessment of their lands is "arbitrary, fraudulent . . . confiscatory . . . [and] without due process of law. . . ." The allegations bring their complaint "squarely within the rule of those cases which hold that when the assessment for a public improvement is so arbitrary and unjust as to work a confiscation of private property it is not a legal assessment, but is in effect a legal fraud upon the owners of private property which is not conclusive upon the court" (*Erro* v. *City of Santa Barbara* (1932) 123 Cal.App. 508, 512-513 [11 P.2d 890]; see also, *Maxwell* v. *City of Santa Rosa, supra,* 53 Cal.2d at pp. 279-281).

California law shields bond buyers by a variety of validation provisions. A ruling which permits attack on the assessment proceedings notwithstanding sale of the bonds is rare indeed. The present ruling deals with a unique set of facts where, according to the record before us, the seller, a municipal corporation, sold the bonds with full knowledge of the pending lawsuit. Whether the bond buyer, a federal agency, requested a "no litigation" certificate does not appear. Bond buyers customarily demand such a certificate. We do not, of course, anticipate the outcome of the trial. The actions of petitioner in issuing and selling (and of the buyer in purchasing) the bonds, in the face of the pending suit below, must also be evaluated in the light of the facts yet to be adduced at trial. ▮ We hold only that the property owners, who properly recorded their objections before the council and then—prior to petitioner's issuance and sale of the bonds—filed their timely suit and served petitioner, are entitled to a factual determination of the issues posed by their complaint, and that the superior court has jurisdiction to proceed further with the action.

The order to show cause is discharged; the temporary stay order which issued herein is terminated; and the petition is denied.

Pierce, P. J., and Friedman, J., concurred.

A petition for rehearing was denied on June 3, 1970, and the following opinion then rendered:

**THE COURT.**—In seeking rehearing, petitioner contends that Streets and Highways Code section 8625 placed a "mandatory duty" upon it to issue the bonds because the property owners did not obtain a temporary restraining order or preliminary injunction to prevent such issuance. From this premise, petitioner further contends that the combined effect of sections 8625 and 8655 of that code was to require the property owners to obtain such provisional relief or else be deemed to have waived their constitutional rights.

These contentions fail. The language of section 8625 is permissive, not

mandatory. It provides that bonds secured by assessments unaffected by a restraining order, injunction, or other cause *"may* be issued in advance of the issuance of the bonds so affected." (Italics ours.) (See, Sts. & Hy. Code, § 16.) The construction placed by petitioner upon sections 8625 and 8655 would lead to the absurd result that a property owner's constitutional rights could be defeated in cases where the bonds were issued following the trial court's *erroneous* denial of a temporary restraining order or preliminary injunction. ▮ Statutory construction which is productive of absurd consequences should be rejected. (*Christward Ministry* v. *County of San Diego* (1969) 271 Cal.App.2d 805, 810 [76 Cal.Rptr. 854].)

Petitioner's reliance on *Bernard* v. *Weaber* (1913) 23 Cal.App. 532 [138 P. 931], is unavailing. Under the statute there applicable (Stats. 1911, p. 1202), as the appellate court observed, "it was the duty of the city treasurer to deliver the bonds" upon the trial court's dissolution of a temporary restraining order. (23 Cal.App. at p. 536.) The court held that the questions on appeal were moot because the bonds had been issued and delivered. Significantly, *the plaintiff landowners in Bernard did not challenge the validity of the assessments on their properties.* Their attack was directed solely against certain procedures whereby the authority to fix the maturity date of the bonds had been delegated to an administrative officer. The legality of the proceedings in other respects was conceded. The only relief sought by them was "an injunction restraining the issuance of the bonds." (*Id.,* p. 534.) In contrast, the property owners in the case at bench not only sought to enjoin sale and delivery of the bonds but also seek a declaratory judgment invalidating the assessments as well as an injunction restraining collection and enforcement of the assessments.

Petitioner's application for a hearing by the Supreme Court was denied July 1, 1970.